Argued and submitted February 26, reversed and remanded
with instructions May 12, reconsideration denied June 24,
petition for review denied August 3, 1982 (293 Or 456)

## In the Matter of the Marriage of

### VINSON,
*Appellant,*

*and*

### VINSON,
*Respondent.*

(No. 25216, CA A22656)

644 P2d 635

Robert P. Van Natta, St. Helens, argued the cause for appellant. With him on the brief was Van Natta & Petersen, St. Helens.

Jack Billings, Eugene, argued the cause for respondent. With him on the brief was Diment & Billings, Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Wife appeals from an order modifying a dissolution decree. The trial court granted husband's motion to modify because of the United States Supreme Court's decision that military pension benefits are not community property subject to property division in dissolution cases. *McCarty v. McCarty*, 453 US 210, 101 S Ct 2728, 69 L Ed 2d 589 (1981). The central question is whether and to what extent *McCarty* may be applied retroactively to a final decree dividing marital property. We reverse.

At the time of the original decree, husband had a vested, matured military pension and could have retired then and received the benefits. He did not plan to retire, however, until 1988. The original trial court decree awarded husband his military retirement benefits, which would have been $1248 per month had he retired at that time. The decree also awarded wife $620 per month in permanent spousal support, almost exactly one-half husband's military retirement entitlement at that time.

Both parties appealed. *Vinson and Vinson*, 48 Or App 283, 616 P2d 1180 (1980). After argument, but before our opinion in that case, we decided that retirement benefits are a marital asset to be considered in formulating financial aspects of dissolution decrees and in appropriate cases be divided in kind as and when received. *Rogers and Rogers*, 45 Or App 885, 609 P2d 877, *modified* 47 Or App 963, 615 P2d 412, *rev den* 289 Or 659 (1980), *modified* 50 Or App 511, 623 P2d 1108, *rev den* 290 Or 853 (1981). We modified the property division aspects of the *Vinson* decree in light of *Rogers* to award wife half the benefits husband was eligible to receive had he retired at the time of dissolution, or $646 per month less taxes on her half, payable as and when husband receives payment. We also increased her spousal support for three years to allow wife to complete her education, reduced it for two more, and terminated it thereafter, or earlier if wife were to begin to receive her share of the retirement benefits within that five years.

Our decision in *Vinson* was issued July 25, 1980. Neither party petitioned for review. Our mandate issued

November 7, 1980. The trial court entered its order on the mandate December 31, 1980. The decree was final.

■ Six months later, the Supreme Court decided in *McCarty* that military pensions are not community property subject to property division in dissolution cases. The Court did not decide that those pensions cannot be considered in making equitable property distributions, but only that the pensions are indivisible property awardable only to the pensioner. The Court noted that the pensions are subject to spousal and child support obligations. Accordingly, contrary to husband's contention, *McCarty* does not affect the trial court's subject matter jurisdiction. Although Oregon is not a community property state, we have found that *McCarty* applies in Oregon, and remanded several cases pending on appeal when *McCarty* was decided for reconsideration of both property division and spousal support. *See Pearce and Pearce,* 53 Or App 521, 632 P2d 501, *rev den* 292 Or 108 (1981); *Hawks and Hawks,* 53 Or App 742, 633 P2d 34 (1981). To the extent that we have applied *McCarty* to cases not final on appeal, we have given it limited retroactive application. We will not go farther and apply it to cases in which the property rights of the parties have been settled by a judgment which became final before the Supreme Court's opinion in *McCarty* was handed down. The important considerations why *McCarty* should not be applied retroactively are well stated in *In Re Marriage of Sheldon,* 124 Cal App 3d 371, 177 Cal Rptr 380 (1981).[1]

---

[1] In *Sheldon,* the court noted that prospective versus retroactive application of judicial decisions turns on three considerations:

"(1) whether 'the decision to be applied nonretroactively. . . establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, [citation] or by deciding an issue of first impression whose resolution was not clearly foreshadowed, [citation]';

"(2) whether the 'history. . . purpose and effect' of the rule mandates restrospective *[sic]* operation; and

"(3) whether retroactive application of the rule ' "could produce substantial inequitable results. . . , "injustice or hardship'. . . " 177 Cal Rptr at 382.

The court also said:

"While review of the first two factors identified in *[Chevron Oil Company v.] Huson* [, 404 US 97, 92 S Ct 349, 30 L Ed 2d 296 (1971)] discussion of retroactivity does not indicate *McCarty should* be accorded retroactive effect, examination of the third factor—convinces us the Court's decision *should not*

■ The trial court had no statutory authority to modify the property division. *See* ORS 107.135(1)(a) (power to modify support provision). This was not a default decree subject to relief under former ORS 18.160[2] (repealed Or Laws 1981, ch 898, § 53), which followed FRCP 60(b), or under ORCP 71B or C, which follow the amended FRCP 60(b) and incorporate the equitable power inherent to relieve parties from fraudulent judgments. *See Harder v. Harder,* 26 Or App 337, 552 P2d 852 (1976). That inherent power is within the court's discretion but does not arise absent extraordinary circumstances such as fraud. *See Ackermann v. United States,* 340 US 193, 71 S Ct 209, 95 L Ed 207 (1950) (court found no "extraordinary circumstances" justifying relief under FRCP 60(b) where petitioner made considered choice not to appeal).

---

be applied to judgments which were final before *McCarty* was filed. In perhaps no other area of law is the need for stability and finality greater than marriage and family law. Without guessing as to how our society may structure future social relationships (cf. *Marvin v. Marvin* (1976) 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106), at this stage of our societal development, marital dissolution is almost by definition a mentally, emotionally, and often physically disruptive experience for the parties involved. Divorce inevitably requires old plans be abandoned, new plans made, and perceptions altered to conform to a changed reality. To permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to re-open old wounds and create new ones. There is no guarantee that the non-service member spouse would have assets sufficient to reimburse the service member for that portion of the pension rights which had previously been an awarded share of community property. Substantial hardship would result in cases where the non-member relied on the property settlement in converting his or her share into non-liquid assets. Moreover, a reallocation of property interests would likely constitute sufficient 'changed circumstances' to trigger a second round of relitigation involving spousal support awards. (See generally, *In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633, 120 Cal. Rptr. 654; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 727, 143 Cal.Rptr. 826; but cf. *In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860-861, 137 Cal.Rptr. 670.) We also note the immense burden on the administration of justice in our civil courts were such relitigation permitted. [Footnote omitted.] Under these circumstances, we conclude that a fully retroactive application of *McCarty* would be inimical to the principles of equity and fairness which underlie this state's family law system. Finding nothing in the nature or rationale of the *McCarty* decision which mandates a retroactive effect, we hold *McCarty* is inapplicable when the property rights in the military pension have been determined by a dissolution judgment which became final before the filing of the United Sttes Supreme Court's opinion. (See *In re Marriage of Brown, supra,* 15 Cal.3d 838, 851 and fn. 13, 126 Cal.Rptr. 633, 544 P.2d 561.)" (Emphasis in original.) 177 Cal Rptr at 384.

[2] *See Arden-Mayfair, Inc. v. Patterson,* 46 Or App 849, 613 P2d 1062, *rev den* 290 Or 149 (1980).

The few courts that have considered whether to reopen dissolution decrees that divided military pensions and were final before *McCarty* are split in favor of limited retroactivity. *Compare Erspan v. Badgett,* 659 F2d 26 (5th Cir 1981) (1963 Texas decree was *res judicata)* and *In Re Marriage of Sheldon, supra, (McCarty* not retroactive) with *Ex parte Acree,* 623 SW2d 810 (Tex App 1981) (full retroactivity). We have independently reviewed the cases and literature to determine what, if any, rule the Supreme Court would have us follow had it considered the question.

We conclude, as did the court in *Erspan,* that nothing in *McCarty* suggests an intent to invalidate prior, valid state court judgments, especially in light of the Supreme Court's forceful invocation of *res judicata* only 11 days before *McCarty* in *Federated Department Stores, Inc. v. Moitie,* 452 US 394, 101 S Ct 2424, 69 L Ed 2d 103, 109 (1981).

> "Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. [Citations omitted.] As this Court explained in Baltimore Steamship Co. v Phillips, 274 US 316, 325, 71 L Ed 1069, 47 S Ct 600 (1927) an 'erroneous conclusion' reached by the court in the first suit does not deprive the defendants in the second action 'of their right to rely upon the plea of res judicata . . . . A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause of action.' We have observed that 'the indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert.' Reed v Allen, 286 US 191, 201, 76 L Ed 1054, 52 S Ct 532, 81 ALR 703 (1932)."[3]

---

[3] We note that the Court acknowledged in *McCarty* denying *certiorari* in 1974 on the exact question posed six years later in *McCarty. See In Re Fithian,* 10 Cal 3d 592, 517 P2d 449, *cert den* 419 US 825, 95 S Ct 41, 42 L Ed 2d 48 (1974). We assume that if Fithian now sought modification or now repetitioned for *certiorari,* the Supreme Court would follow its *Federated Department Stores* position. *Cf. Hutto v. Davis,* 454 US 370, 102 S Ct 703, 70 L Ed 2d 556, 561 (1982) (lower courts must follow Supreme Court policy).

■     Here, respondent did not seek direct review beyond this court and now has no direct review available. He did not keep his direct appeal alive until *McCarty* was decided, as was the situation in both *Hawks* and *Pearce,* which we remanded for reconsideration in light of *McCarty.* Respondent here is attacking a final decree on the merits. To succeed he must avoid *res judicata.*

The trial court apparently presumed that the *McCarty* holding was an extraordinary circumstance that allowed the court to exercise its discretion and inherent power to relieve a party from a final judgment. However, in light of *Federated Department Stores* and *Ackerman,* such discretion and power may not be exercised as a substitute for an appeal, unless the appellant shows that extraordinary circumstances prevented his appeal. We hold that this rule applies to motions made under ORCP 71B and 71C to overcome the *res judicata* effect of a final judgment. We also hold that a United States Supreme Court decision that indicates that a prior final judgment of this court was erroneous is not such a circumstance.

Respondent has not alleged or shown fraud or any extraordinary excuse for failure to appeal further. The decree as we had modified it was and is final.

Reversed and remanded with instructions to reinstate the decree as amended under the previous mandate. Costs to appellant.