Argued and submitted April 14, reversed and remanded with instructions
June 25, 1997

STATE OF OREGON,
DEPARTMENT OF HUMAN RESOURCES,
*Respondent,*

*v.*

Michael SHINALL,
*Respondent.*

Lisa SHIRES,
*Respondent,*

*and*

Johnny Edward BALL,
*Appellant.*

(F-626 & F-1006; CA A92497)

941 P2d 616

Clayton C. Patrick argued the cause for appellant. With him on the brief was Patrick & Meadowbrook.

Carla M. French argued the cause for respondent Lisa Shires. With her on the brief was Ferder, Brandt, Casebeer, Cooper, Hoyt & French, LLP.

Jas. Adams, Assistant Attorney General, waived appearance for respondent Department of Human Resources.

No appearance for respondent Michael Shinall.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Appellant Ball appeals the judgment in this paternity proceeding. The judgment set aside a 1989 judgment that declared that respondent Shinall was the father of the child of respondent mother, Shires. The judgment also declared that Ball is the father. We reverse.

The child was born October 22, 1988. On October 23, Shires, who was receiving public assistance, filled out and signed a paternity affidavit in which she named Shinall as the child's father.[1] Shinall was served with a copy of the state's Notice and Finding of Financial Responsibility, ORS 416.415, which stated, *inter alia*, that he had been named as the father of the child. The notice provided the information that, if Shinall did not respond within 30 days, Support Enforcement Division would enter an order establishing him as the father of the child and ordering him to pay support. ORS 416.415(3). Shinall did not respond, an order of default was entered and, in April 1989, judgment was entered declaring Shinall as the father. ORS 416.440.

In July 1993, Shires filed a filiation petition seeking to have Ball declared father of the child. Ball, who had no knowledge of the earlier administrative filiation proceeding, submitted to blood tests. On the basis of the tests, in January 1994, Ball stipulated in open court that he is the father of the child.[2]

In March, before judgment was entered, Ball filed motions for reconsideration, to reopen the hearing and for a new trial because of the newly discovered evidence that there was an existing paternity order for the child.[3] In June, Shires and Shinall moved for relief from the 1989 judgment.[4] By

---

[1] The affidavit stated that Shires had lived with Shinall and was seeing him at the time of conception and that she had not had sexual intercourse with another man within 30 days before or after the time the child was conceived.

[2] The parties do not provide the results of that test. At the hearing on his motions, Ball testified that his understanding of the results of the test was that it did not establish that he was or was not the father but, rather, that it showed the "possibility" that the child could be his, "just by the percentage rate."

[3] Ball's attorney was given that information by an employee of the Support Enforcement Division.

[4] The state declined to join with them but did not object.

stipulation of the parties, the motion of Shires and Shinall was consolidated with the paternity action against Ball. Following a November hearing, the trial court denied Ball's motions for reconsideration, set aside the 1989 judgment and entered the judgment declaring Ball to be the father. Ball assigns error to those rulings.

The trial court cited ORCP 71 C as authority to set aside the 1989 judgment. That rule

> "does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from a judgment, or the power of a court to grant relief to a defendant under Rule 7 D(6)(f), or the power of a court to set aside a judgment for fraud upon the court."

Our review of the setting aside of a judgment is for abuse of discretion. *See Braat v. Andrews*, 266 Or 537, 541, 514 P2d 540 (1973) (although trial court had discretion to modify judgment, question remains whether there were sufficient reasons for its exercise). Ball argues that, in setting aside the 1989 judgment more than five years after entry, the court abused its discretion by ignoring the strong policy for finality of judgments. He contends that ORCP 71 C requires that a motion to set aside be filed within a reasonable time and that here Shinall was aware of the judgment but did nothing. Shires responds[5] that the trial court did not abuse its discretion, because there was no reason for Shinall to do anything until Shires began to see that the child resembled Ball and became concerned that the wrong individual had been named as the father.

The discretion of a court to set aside a judgment under ORCP 71 C is not unlimited. As we summarized in *Condliff v. Priest*, 82 Or App 115, 118, 727 P2d 175 (1986):

> "Rule ORCP 71 C reaffirms a trial court's traditional power to modify a judgment within a reasonable time. *Palmateer v. Homestead Development Corp.*, 67 Or App 678, 680 P2d 695 (1984). Although the boundaries of that authority are

---

[5] Shinall did not appear on appeal.

not well defined, generally the court's exercise of its inherent authority has been limited to making technical amendments, *Palmateer v. Homestead Development Corp., supra,* to correcting errors of the court, *Stevenson v. U.S. National Bank,* 296 Or 495, 677 P2d 696 (1984), or to situations in which 'extraordinary circumstances' are present. *Vinson and Vinson,* 57 Or App 355, 644 P2d 635, *rev den* 293 Or 456 (1982). Generally, the authority has not been used to allow parties to circumvent *res judicata* or to assert new substantive arguments. *Stevenson v. U.S. National Bank, supra; Far West Landscaping v. Modern Merchandising,* 287 Or 653, 601 P2d 1237 (1979)."

There is no contention that here the court merely made a technical amendment or corrected an error. Rather, the court appears to have concluded that the circumstances were extraordinary. The trial court found that Shires and Shinall were "nominal parties" to the administrative proceeding:

"Obviously, the moving party behind the administrative matters was the State of Oregon. The motivation was clearly that Lisa Shires was receiving public assistance for [the child] and the State sought to establish financial responsibility by someone. In actuality, this is the first real claim by Lisa Shires to establish paternity. When Lisa Shires was no longer on public assistance, [the state] quickly lost interest in pursuing support from Mr. Shinall.

"[Ball] is not directly impacted by the proceedings to set aside the administrative judgment. He has no stake in those proceedings."

At the outset, we reject the court's conclusion that Ball is not affected by the administrative proceedings. Although that may have been so before Shires brought the filiation proceeding against Ball, Ball's interests were clearly implicated by the prior judgment once Shires sought to have him declared the father of the child. For the same reason, we also reject Shires' position on appeal that Ball's objections "need not be considered" because the earlier filiation proceeding "had no direct bearing" that affected his rights and interests. Furthermore, Shires, Shinall and Ball all stipulated to consolidation of the administrative and filiation proceedings, and, under these circumstances, Shires cannot now be heard

to argue that Ball has no standing to challenge setting aside the judgment from the administrative proceeding.

■     The court erred in holding that the only validity to the 1989 judgment was that it established who would reimburse the state for public assistance. Those administrative proceedings also established Shinall's paternity, and a judgment was entered on the administrative order. Under ORS 416.465,[6] Shires and Shinall had one year to seek relief from the administrative order. They did not do so. What they now seek to do through the filiation action against Ball is to circumvent the *res judicata* effect of paternity established in the prior judgment. That is not a ground for setting aside the valid 1989 judgment. *Condliff*, 82 Or App at 118; *see Vinson*, 57 Or App at 360, (" 'Nor are the *res judicata* consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.' " (quoting *Federated Department Stores, Inc. v. Moitie*, 452 US 394, 398, 101 S Ct 2424, 69 L Ed 2d 103 (1981)).

■■     The parties have not identified anything in the 1989 proceedings or their roles in them that constitutes "extraordinary circumstances" so as to provide a basis for setting aside the 1989 judgment. *See Vinson*, 57 Or App at 359 (inherent power to relieve parties from judgments is within court's discretion but does not arise in the absence of extraordinary circumstances such as fraud). Shires argues, however, that the trial court did not err in setting the judgment aside because her motion was also based on ORCP 71 B(1)(e), which provides, in part, that a party may be relieved from a judgment for the reason that "it is no longer equitable that the judgment should have prospective application." However, that rule does not assist Shires. As explained by the staff comment to the Council on Court Procedure:

"Paragraph 71 B(1)(e) is new but simply codifies the common law remedy of audita querela (available in Oregon by

---

[6] ORS 416.465 provides:

"The court may, upon such terms as may be just at any time *within one year* after notice thereof, relieve a parent from an administrative order taken against that parent because of mistake, inadvertence, surprise or excusable neglect." (Emphasis supplied.)

motion invoking the inherent power of the court). *Herrick v. Wallace*, 114 Or 520, 525, 236 P2d 471 (1925). The reference to 'no longer equitable' restates the rule that a judgment with prospective operation may be subject to change based upon changed conditions. *Farmers' Loan Co. v. Oregon Pac. R. Co.*, 28 Or 44, 65-69, 40 P 1089 (1895)." Reprinted in Kloppenberg, *Oregon Rules of Civil Procedure 1995-1996 Handbook* 223-24 (1995).

*Farmer's* was an appeal from an order confirming a sale of railway franchises and property on the foreclosure of a mortgage. The original decree had envisioned a restructuring of the company, giving powers to holders of receiver's certificates and bondholders to bid their securities as part of the purchase money at the sale. The order of the court eliminated those provisions, requiring cash only. The appellants argued that the court was without authority to change the original decree.

The Supreme Court rejected the appellants' position. The court found that changed financial conditions supported modifying the decree, a modification that did not reach the decree's substance:

"[The cited authorities] conclusively show that, while a court cannot, by a subsequent order, modify the essential features of a final decree, it does possess the inherent right of changing the time of its execution. This right being granted, it must, upon principle, be conceded that a court possesses an equal right to modify by a subsequent order the manner of the enforcement of its decrees, for it requires no more power to modify the manner than it does to change the time of executing them." 28 Or at 67.

*See also Silliman v. Silliman*, 66 Or 402, 406, 133 P 769 (1913) (court does not have power to amend judgment in any matter of substance but may correct clerical errors).

The antecedents of ORCP 71 B(1)(e), thus, do not support setting aside the 1989 judgment here. That action changed the substantive provision of the finding of paternity of Shinall. That result goes beyond altering the manner of enforcing a judgment to modify its substance so as to avoid the effects of res judicata. Consequently, ORCP 71 B(1)(e) is inapposite.

The administrative proceeding gave Shinall notice that he had been named as the father of the child; it gave him an opportunity to be heard on the issue and to appeal the finding. Neither Shires nor Shinall established any ground to set aside the judgment rendered as a result of those proceedings. Consequently, the trial court abused its discretion in setting aside the 1989 judgment. *See Watson v. State of Oregon*, 71 Or App 734, 694 P2d 560 (1985) (in light of strong policy favoring finality of litigation, intrinsic fraud did not permit setting aside judgment of paternity to which the plaintiff stipulated without seeking to present evidence on the disputed issue).[7] It follows that, because the 1989 judgment that adjudicated Shinall to be the father remained valid, the court also erred in entering the 1994 judgment naming Ball as the father of the child.

Reversed and remanded with instructions to vacate 1994 judgment and to reinstate 1989 judgment.

---

[7] In 1995, the legislature provided for finality of paternity judgments based on administrative orders. ORS 416.443(1) provides:

"No later than one year after an order establishing paternity is docketed under ORS 416.440 and if no genetic parentage test has been completed, a party may apply to the Support Enforcement Division or a district attorney to have the issue of paternity reopened."