Argued and submitted February 7, 2000, affirmed November 14, 2001

## Vineta L. PATRICK,
as personal representative of
the Estate of Ralph E. Patrick, deceased,
*Appellant,*

*v.*

## STATE OF OREGON,
and Klamath County,
*Respondents.*

98C-11291; A102733

36 P3d 976

Meagan A. Flynn argued the cause for appellant. With her on the briefs was Pozzi Wilson Atchison, LLP.

Jas Jeffrey Adams, Assistant Attorney General, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Plaintiff Vineta Patrick brought this action against defendants, the State of Oregon and Klamath County, seeking to recover damages based on the alleged negligence of the Klamath County court clerk. The trial court granted defendants' motion for summary judgment on the ground that, as a matter of law, the clerk's conduct was not the cause of plaintiff's damages. Plaintiff appeals, and we affirm.

This negligence action arises out of an earlier wrongful death action, which resulted in an appeal to this court. *See Patrick v. Otteman*, 158 Or App 175, 974 P2d 217, *rev den* 328 Or 594 (1999). Plaintiff brought that earlier action as personal representative of her husband's estate, alleging medical malpractice against Otteman, a physician, and Merle West Medical Center (medical center). Before trial, pursuant to the parties' stipulation, the medical center was dismissed from the action with prejudice. The trial court signed a dismissal order denominated a "judgment." In entering the dismissal in the court register, however, the court clerk entered it as an "order," not as a "judgment." Several months later, the wrongful death action went to trial on the allegations against Otteman. The jury found Otteman liable and awarded plaintiff $98,694.10 in economic damages and $1,150,000 in noneconomic damages. After the jury's verdict, Otteman moved to reduce the award of noneconomic damages to $500,000, pursuant to the cap on such damages imposed by ORS 18.560(1).[1] Relying on decisions of this court declaring the statutory cap to be unconstitutional,[2] the trial court declined to reduce the award and, instead, entered a judgment against Otteman for the jury's full award. That judgment was entered on November 14, 1995.

---

[1] ORS 18.560(1) provides:

"Except for claims subject to ORS 30.260 to 30.300 and ORS chapter 656, in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."

[2] *Greist v. Phillips*, 128 Or App 390, 875 P2d 1199 (1994), *rev'd* 322 Or 281, 906 P2d 789 (1995); *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 873 P2d 413 (1994), *rev dismissed* 321 Or 561 (1995).

Ten days later, the Oregon Supreme Court decided *Greist v. Phillips*, 322 Or 281, 906 P2d 789 (1995), which upheld the noneconomic damages cap imposed by ORS 18.560(1) as to wrongful death claims and overruled the contrary decisions of this court. Six days after the *Greist* decision, and in reliance on it, Otteman filed a motion in the trial court to modify and to reconsider the judgment and to reduce the noneconomic damages in conformance with ORS 18.560(1). The trial court granted Otteman's motions, vacated the earlier judgment, and entered an amended monetary judgment that reduced the amount of noneconomic damages to conform to the statutory cap. Significantly, the trial court did so on December 13, 1995. As earlier noted, the original judgment had been entered on November 14, 1995. Thus, the trial court modified its judgment before the 30-day period for an appeal had expired, and at a time when no appeal in fact had been filed. *See* ORS 19.255 (specifying time for appeal).

Both parties appealed the modified judgment. In the ensuing appeal, plaintiff argued that the trial court lacked authority to modify the judgment and to reduce the award of noneconomic damages because, when the trial court made the modification, the original judgment was final and appealable. Otteman protectively cross-appealed, arguing that the trial court erred in denying his original motion for entry of a judgment conforming to ORS 18.560.

That appeal was under advisement in this court when plaintiff brought this separate negligence action against the State of Oregon and Klamath County. Plaintiff alleged that, as a result of the court clerk's failure to enter the dismissal of the medical center in the register as a judgment, a delay "may have" occurred in entry of a legally enforceable judgment during which the law governing the amount of damages available to the estate "changed." According to plaintiff's allegations, the clerk's action compromised plaintiff's ability to collect the full value of her judgment against Otteman. Plaintiff sought damages in an amount that represented the difference between the noneconomic damages that the jury actually awarded against Otteman in the wrongful death action and the amount that the trial court imposed pursuant to the statutory cap.

In effect, then, plaintiff brought this negligence action protectively. As just described, in the then-pending appeal of the wrongful death action, plaintiff's position was that the original judgment was final and that, because it was, the court had no authority to modify it. If plaintiff were correct in that regard, then the original judgment would be reinstated. This negligence action was brought in the event that plaintiff was wrong. That is, if we were to conclude in the appeal of the wrongful death action that the court had the authority to modify the judgment, plaintiff expected our theory to be that the court had such authority because the original judgment was not "final" due to the court clerk's failure to enter the dismissal of the medical center as a judgment. Plaintiff therefore pursued this negligence action against the county and the state on the theory that the clerk's conduct damaged plaintiff by causing her to lose the benefit of the original judgment.

The appeal of the wrongful death action was still pending before this court when defendants moved for summary judgment in this action. In support of their motion, defendants argued that the clerk did not breach any duty by entering the dismissal in the register as an "order" rather than as a "judgment" because the dismissal, however it was denominated, did not legally qualify as a "judgment." *See* ORCP 67 A (defining "judgment" as a final determination of the rights of the parties to an action). The trial court agreed. The trial court also concluded that, when the court in the wrongful death action modified the original judgment, the original judgment was final and appealable notwithstanding the clerk's failure to enter the earlier dismissal as a judgment rather than an order. Thus, in the trial court's view, the issue of the legality of the later modification would turn on whether and under what circumstances a court may modify its own final and appealable judgment. Under that reasoning, the clerk's failure to enter the dismissal of the medical center as a judgment had no bearing on the legality of the modified judgment and, as a matter of law, the clerk's conduct could not have caused plaintiff's damages.

After the trial court granted defendants' motion for summary judgment in this negligence action, we decided the appeal and issued our opinion in the wrongful death action.

Contrary to the trial court's reasoning in granting summary judgment in this case, we concluded that the clerk's failure to enter the dismissal of the medical center as a judgment did, in fact, prevent the original judgment against Otteman from qualifying as final and appealable. *Patrick*, 158 Or App at 187. We further concluded that, because the original judgment was not final, the trial court had authority to modify it and to reduce the award of economic damages consistently with *Greist. Id.* Given our resolution, we did not need to decide what authority, if any, the trial court would have had to modify the original judgment had that judgment been final, and we therefore did not reach that question. *Id.*[3]

This negligence action requires us now to decide that unresolved question. On appeal, the parties agree that the trial court's reasoning proved wrong, given our resolution of the appeal in the wrongful death action. The parties therefore focus on whether the grant of summary judgment nevertheless should be affirmed because the trial court was "right for the wrong reason."[4] The parties agree, at least tacitly, that the causal link between the clerk's conduct and plaintiff's damages depends on whether the trial court in the wrongful death case had authority to do what it thought—albeit incorrectly—that it was doing: *viz.*, modify its judgment, even though the judgment was final and appealable, because an appellate court pronouncement revealed that the judgment was legally wrong. Relying on both procedural statutes and principles of inherent authority, the parties take opposite views of the answer to that issue, with plaintiff asserting that trial courts have no such authority, and defendants asserting that they do. Because there are no disputed issues of fact, the question before us is purely one of law. *See* ORCP 47; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997) (in reviewing grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party to determine whether there are genuine

---

[3] Nor did we reach the issue raised on the cross-appeal. Rather, we concluded that the trial court's denial of the original motion to reduce the award of noneconomic damages was moot. *Id.*

[4] *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (discussing "right for the wrong reason" doctrine as an alternative basis for affirmance of trial court judgments).

issues of material fact and whether the moving parties are entitled to judgment as a matter of law).

Although the parties debate the significance of several provisions of the Oregon Rules of Civil Procedure (ORCP), we discuss only ORCP 71 C, which we conclude is dispositive. The first two subsections of ORCP 71 describe specific circumstances in which a trial court is expressly granted authority to vacate or modify a final judgment. *See* ORCP 71 A and 71 B. Subsection C operates differently. It expressly *reserves* trial court authority by providing:

> "This rule does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from a judgment, or the power of a court to grant relief to a defendant under Rule 7 D(6)(f), or the power of a court to set aside a judgment for fraud upon the court."

ORCP 71 C thus "reaffirms a trial court's traditional power to modify a judgment." *Condliff v. Priest,* 82 Or App 115, 118, 727 P2d 175 (1986). The inquiry invited by that provision in this case is: Under traditional principles, would a trial court have authority to modify a judgment at the stage of the proceedings when the trial court in the wrongful death action did so—*i.e.,* before an appeal had been taken and before the time to appeal had expired—and for the reason that the trial court did so—*i.e.,* because the original judgment did not conform to the applicable law?

To answer that question, we look to the substantial body of case law predating the promulgation of ORCP 71 in 1980.[5] The time-honored rule was that a court has the inherent power to modify, amend, set aside or vacate any order or judgment it makes as long as it retains jurisdiction over the underlying action. *Hudelson v. Sanders-Swafford Co.,* 111 Or 600, 606, 227 P 310 (1924). As a consequence, throughout much of Oregon's jurisprudential history, a trial court could

---

[5] ORCP 71 was promulgated by the Council on Court Procedures in 1980. *See* Council on Court Procedures, Staff Comment to ORCP 71, *reprinted in* Lisa A. Kloppenberg, *Oregon Rules of Civil Procedure: 1999 Handbook,* 233 (1997). It is a modified form of Federal Rule of Civil Procedure (FRCP) 60. Notably, FRCP 60 does not contain a provision that similarly preserves the traditional inherent power of the court to modify a final judgment.

exercise its inherent authority to set aside or modify its judgment during the term of court in which the judgment had been entered. *Bailey v. Steele*, 263 Or 399, 401, 502 P2d 586 (1972) (citing representative cases). Although the terms for different trial courts varied, they typically lasted seven months or less. *Id*. at 406 (McAllister, J., dissenting). In 1959, the legislature abolished terms of court. ORS 1.055. In doing so, the legislature explicitly provided that the change would have no effect on the duties and powers of the court as long as those duties and powers were exercised "within a reasonable period of time." *Id.*

■■ As a result of that change, the rule became that a trial court has inherent authority to correct or set aside a judgment, provided that it does so within a reasonable time and for good and sufficient reason. *Morphet v. Morphet*, 263 Or 311, 317-18, 502 P2d 255 (1972). Because both inquiries— the reasonableness of the time period involved, and the good cause for disturbing the judgment—turn on the facts and circumstances of the particular case, those matters ordinarily are entrusted to the trial court's discretion. *Bailey,* 263 Or at 403-05 (neither three-year passage of time, nor circumstances in which modification of judgment was sought, foreclosed trial court's exercise of inherent authority to modify judgment; case therefore was remanded to trial court for it to exercise its discretion in the first instance); *Morphet*, 263 Or at 318-19 (deferring to trial court's assessment of good cause); *Miller v. Miller*, 228 Or 301, 305, 365 P2d 86 (1961) (reasonableness of time period ordinarily is for trial court to decide).

One of the few cases, and perhaps the only one, in which the Oregon Supreme Court found such an abuse of discretion was in *Far West Landscaping v. Modern Merchandising,* 287 Or 653, 657-58, 601 P2d 1237 (1979), which was decided the year before ORCP 71 C was promulgated. In *Far West Landscaping*, the trial court judge mistakenly told the attorney for the losing party that the judgment had not been signed or entered; in fact, it had been. The judge further agreed not to enter the judgment until a specified later date as an accommodation to the attorney, who was to be out of town for a while and who anticipated that her client would want to appeal. The attorney relied on the judge's representations and did not discover the judge's mistake until it was

too late to appeal. In response to the attorney's motion, the trial court set aside the judgment and entered a new but identical one so that the attorney would have additional time to appeal. On appeal, the court observed that the legislative change abolishing terms of court removed the common-law time stricture for the trial court's exercise of its inherent authority to rectify its mistakes, and liberalized it so that the authority could be exercised within a "reasonable time." *Id.* at 658. The problem in *Far West Landscaping*, however, was with the trial court's reasons for exercising its authority. The court concluded that the trial court's broad discretion to exercise its inherent modification authority could not be exercised for "the sole purpose of extending the time for appeal" because to do so would directly contradict the statutorily prescribed time in which an appeal must be taken. *Id.* at 659.[6]

■     From that case law, we can distill the following principles as the backdrop against which ORCP 71 C was promulgated. A trial court has inherent authority to vacate or modify its own judgments, subject to the primary limitations that it do so within a reasonable time and for good and sufficient reasons. Ordinarily, the reasonableness of the time involved and the sufficiency of the reasons are matters entrusted to the trial court's sound discretion. A trial court has no discretion, however, to vacate or modify its own judgment for the sole purpose of contravening or circumventing other important limitations that flow from the finality of judgments, such as the jurisdictional time frame within which the legislature has authorized an appeal to be taken. As a matter of law, such an objective is not "good cause" for vacating or modifying an otherwise proper judgment.

---

[6] A few years after ORCP 71 C came into existence, the court explicitly limited *Far West Landscaping* to its rationale. *See Stevenson v. U.S. National Bank*, 296 Or 495, 677 P2d 696 (1984). In particular, the court held that *Far West Landscaping* precludes a trial court from vacating its own judgment only when the court "came to a final decision and later set aside a judgment *merely* to accommodate a party who missed the time for appeal." *Id.* at 498 (emphasis added). The same limitation does not apply when a trial court vacates a judgment to rectify the trial court's own mistake in entering it, even if the trial court then reenters an identical judgment and thereby effectively extends the time to appeal. The court held that, under ORCP 71 C, a trial court retains inherent authority to correct a mistake in its entry of judgment. *Id.* (also citing ORCP 71 A as basis for the trial court's authority, and reserving the question of whether ORCP 70 B applied to the particular circumstances presented).

■   The precise questions here, then, are: Did the trial court in the wrongful death action modify the original judgment within a reasonable time and for good cause? Both questions are readily answered "yes." As to the reasonableness of the time period, the decision in *Greist* issued only 10 days after the judgment was entered. Only six days after that, Otteman moved for reconsideration and modification of the judgment. The trial court granted those motions and conformed its judgment to the requirements of the applicable law before the 30-day time for appeal had run and before any party had appealed from the original judgment. Thus, the court modified the judgment while it still retained full jurisdiction over the action. *See, e.g.*, ORS 19.270 (when a notice of appeal has been filed, the trial court retains only those powers "in connection with the appeal as are conferred by law"); *see generally Murray Well-Drilling v. Deisch*, 75 Or App 1, 704 P2d 1159 (1985), *rev den* 300 Or 546 (1986) (discussing trial court and appellate court jurisdiction as affected by the filing of a notice of appeal). The time period involved was eminently reasonable; indeed, plaintiff does not argue to the contrary.

Likewise, plaintiff does not argue that the trial court's reasons for modifying the original judgment were not sufficient. Nor, under these circumstances, would such an argument persuade us. Put bluntly, the trial court's original judgment awarded noneconomic damages in an amount that was unlawful. To be sure, the trial court made that award in good faith—it relied on this court's intermediate appellate decisions holding that the cap imposed by ORS 18.560(1) was unconstitutional. But our decisions were wrong, as *Greist* established. The trial court in the wrongful death action thus modified its judgment to conform to what the law required. Moreover, it did so at a time when Otteman could pursue an appeal to this court and obtain a reversal of the judgment on that ground. For the court to have refused to modify its judgment to conform to *Greist* would have forced Otteman to pursue an appeal that he was sure to win. Avoiding unnecessary time and expense for the parties and an unnecessary expenditure of judicial resources to achieve a legally correct result was a sound reason for the trial court to exercise its discretion to modify the judgment. *See Morphet*, 263 Or at 318

(judicial economy and efficiency both are factors in considering whether good cause supported the trial court's decision to modify its judgment).

In arguing that the trial court in the wrongful death action could not modify the judgment, plaintiff cites a series of decisions from this court holding that a trial court may exercise its inherent authority to set aside a judgment only for "extraordinary circumstances" of a kind not present in this case—*e.g.*, to make a purely technical amendment or to redress fraud, duress, or breach of fiduciary duty. *See Horrocks and Horrocks*, 124 Or App 233, 237 n 5, 862 P2d 540 (1993), *rev den* 318 Or 326 (1994); *Blue Horse v. Sisters of Providence*, 113 Or App 82, 86, 830 P2d 611, *rev den* 314 Or 727 (1992); *Renninger and Renninger*, 82 Or App 706, 730 P2d 37 (1986); *Vinson and Vinson*, 57 Or App 355, 644 P2d 635, *rev den* 293 Or 456 (1982). There are two problems with plaintiff's reliance on that line of authority.

First, those cases do not fix the circumstances in which a court may modify a judgment as narrowly as plaintiff suggests. We have observed that "the boundaries" of a trial court's preserved inherent authority under ORCP 71 C "are not well defined." *Condliff*, 82 Or App at 118. Beyond that, we have acknowledged that "generally" a court's exercise of its inherent authority has been limited to making technical amendments and to situations involving "extraordinary circumstances." *Id.* (citing cases). Of importance for this case, however, we have also observed that, at least in some circumstances, a court may exercise such authority to correct its own errors. *Id.* (citing *Stevenson v. U.S. National Bank*, 296 Or 495, 677 P2d 969 (1984)). This was such a circumstance.

Second, and more fundamentally, plaintiff ignores the procedural posture of the cases in which we announced those limitations. All of the cases on which plaintiff relies involved modifications of judgments after the time to appeal had passed. The fact that the appeal period had expired was central to our rationale, which was to further the strong policy favoring the finality and effectiveness of judgments. That is apparent from our holding in *Vinson*, for example, which is the earliest of the cases imposing an "extraordinary circumstances" limitation. There, the losing party appealed but not

on the ground on which it later sought modification. After the appeal became final, that party asked the trial court to modify the judgment based on a legal principle announced in an intervening United States Supreme Court decision. We held that a trial court's discretion and inherent power to relieve a party from a judgment

> "may not be exercised as a substitute for an appeal, unless the appellant shows that extraordinary circumstances prevented his appeal. [This] rule applies to motions made under ORCP * * * 71 C to overcome the *res judicata* effect of a final judgment."

*Vinson,* 57 Or App at 361; *see also Dept. of Human Resources v. Shinall,* 148 Or App 560, 563-65, 941 P2d 616 (1997) (declining to let a party circumvent the *res judicata* effect of a prior final judgment); *Horrocks,* 124 Or App at 235; *Renninger,* 82 Or App at 708.[7]

■  We decline to extend the "exceptional circumstances" limitation to the significantly different posture of this case. The rationale of that limitation does not logically apply to confine a trial court's inherent authority when, as here, a judgment has been entered but the time for appeal has not run. To do so would be contrary to the traditional principles we earlier outlined, which acknowledge a trial court's broad authority to modify its own judgment while it retains jurisdiction over a matter. That authority is constrained only by whether the court acts within a reasonable time and for good and sufficient reasons. The trial court's decision in the wrongful death action satisfied those criteria, as we have concluded.

■  That conclusion disposes of plaintiff's claim of negligence in this case. The trial court in the wrongful death action would have had authority to modify the original judgment in the wrongful death action even if the judgment had been final and subject to appeal. Consequently, the court

---

[7] In *Blue Horse,* we applied the "exceptional circumstances" limitation to a modification sought before the judgment had become unappealable. But we did so citing only cases in which we had applied that rule after the time to appeal had passed, and without considering whether the rule should logically extend to an appealable judgment. Because *Blue Horse* did not explicitly consider that question or purport to resolve it, we do not consider it binding on the issue.

clerk's failure to enter the dismissal of the medical center as a judgment did not cause the trial court to have modification authority that it would have lacked but for the clerk's entry of the dismissal as an order. Consequently, although our reasoning differs from that of the trial court, we reach the same result: As a matter of law, the clerk's actions could not be found to be the cause of plaintiff's damages, which is a conclusion that defeats plaintiff's claim of negligence. *See Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988) (describing elements of a common-law negligence claim). The trial court therefore properly granted summary judgment in defendants' favor.

Affirmed.