Argued and submitted December 5, 2005, reversed and remanded
December 13, 2006, petition for review denied March 7, 2007 (342 Or 473)

Lillian Jane D'AMICO,
by and through Anne E. Tracey,
her Guardian Ad Litem,
*Appellant,*

*v.*

Robert ELLINWOOD, III,
*Respondent.*

Robert ELLINWOOD, III,
*Third-Party Plaintiff,*

*v.*

Andrea J. D'AMICO,
*Third-Party Defendant.*

C02 3308DRB; A122399

149 P3d 277

Eli D. Stutsman argued the cause for appellant. With him on the briefs was Eli D. Stutsman A Professional Corporation.

Peter Bunch argued the cause for respondent. With him on the brief was Zimmer & Bunch, LLC.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

ORTEGA, J.

_____

*Landau, J., *vice* Richardson, S. J.

## ORTEGA, J.

Child, through her guardian ad litem, appeals from a judgment dismissing her paternity claim against Robert Ellinwood III. The trial court granted Ellinwood's motion for summary judgment on the ground that child's claim was barred by a stipulated judgment of nonpaternity entered in a dissolution proceeding between Ellinwood and child's mother, Andrea D'Amico. We conclude that, because child was neither a party nor in privity with a party to the dissolution proceeding, the judgment did not bar her claim. Accordingly, we reverse and remand for further proceedings.

The material facts are undisputed. D'Amico and Ellinwood were married in 1995, and child was born six months later. In 1998, Ellinwood filed a petition for dissolution of the marriage, alleging that child was a child of the parties. However, two months later, Ellinwood moved to amend the petition, alleging uncertainty about whether he was child's biological father and requesting genetic testing. Shortly thereafter, the parties agreed to a stipulated judgment regarding child's paternity, which the trial court entered in early 1999.

The "Findings" section of that judgment recited that Ellinwood "denies that he is [child's] biological father." It further provided:

> "The parties are convinced that, because of the serious and ongoing conflict between them, it would be in [child's] best interest if the parties resolved the parentage dispute by entering a Judgment which declares that [Ellinwood] is not [child's] father and that, accordingly, [Ellinwood] will have no legal rights or obligations with respect to [child]."

D'Amico declared that she had the ability, assets, and income to meet all of child's present and future needs.

The judgment then declared that Ellinwood "is not the biological father of [child]." Under the terms of the judgment, Ellinwood relinquished all legal rights with respect to child "such that [child] will no longer be legally related to [Ellinwood] and accordingly [child] will no longer be considered an heir of [Ellinwood] for purposes of laws relating to wills and intestate succession." D'Amico surrendered "for

herself and on behalf of [child] * * * all rights to receive child support or any other type of support from [Ellinwood] for the benefit of [child]." The parties, by signing the judgment, "stipulate[d] to all of the facts and agreements recited [in the judgment]" and to its entry.

The parties subsequently entered into a stipulated judgment dissolving their marriage. That judgment acknowledged the prior judgment and stated that "[n]o custody or child support issues are involved in this case." The dissolution judgment awarded D'Amico $675,000 as an equalizing judgment and $150,000 for a covenant not to compete, related to business interests that the parties had developed during their marriage.

About three years after entry of the dissolution judgment, child filed a petition alleging that Ellinwood is child's biological father and seeking a declaration of paternity and an award of child support. Child attached an affidavit from D'Amico, stating that Ellinwood is child's biological father and that D'Amico had signed the stipulated nonpaternity judgment because she "agreed that our daughter would be better off without contact from [Ellinwood] because of the acrimony and bitterness of our circumstances." She stated that child "was not a party to the proceeding" and did not know about it.

Ellinwood moved for summary judgment, contending that the doctrines of *res judicata*, issue preclusion, and judicial estoppel precluded child's paternity proceeding. Child responded that those principles did not bar her paternity claim, because she was neither a party nor in privity with a party to the dissolution proceeding.

The trial court entered summary judgment in Ellinwood's favor. The court found that, in the stipulated judgment of nonpaternity, D'Amico "agreed, swore, and corroborated that Ellinwood was not [c]hild's legal father." Apparently relying on *Dept. of Human Resources v. Shinall*, 148 Or App 560, 941 P2d 616 (1997)—which we discuss below—the court concluded that the stipulated judgment was binding on child. The court accordingly dismissed all of child's claims.[1]

---

[1] The court entered a limited judgment because it had not yet disposed of Ellinwood's third-party claims against D'Amico.

■ On appeal, child renews her argument that the non-paternity judgment does not bind her, because she was neither a party nor in privity with a party to that proceeding. Ellinwood responds that child was in privity with D'Amico in the dissolution proceeding. Ellinwood does not contend that child was a party or that she is bound even if she was not in privity with D'Amico. He thus implicitly concedes that if child was not in privity with D'Amico, child is not bound by the judgment. We begin our discussion of the privity question by explaining why that concession is legally correct.

■ Oregon has long subscribed to the related common-law doctrines of issue preclusion (collateral estoppel) and claim preclusion (*res judicata*). *North Clackamas School Dist. v. White*, 305 Or 48, 50, 750 P2d 485, *modified on other grounds on recons*, 305 Or 468, 752 P2d 1210 (1988).[2] Both "prevent[ ] harassment by successive proceedings and promote[ ] economy of resources in the adjudicatory process." *Id.* at 50-51. Claim preclusion bars a party from relitigating the same claim against the same opponent or another claim that is " 'based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.' " *Bloomfield v. Weakland*, 339 Or 504, 510-11, 123 P3d 275 (2005) (quoting *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982)). Issue preclusion, on the other hand, applies when the parties to a prior action subsequently, in a different action, again litigate issues "actually litigated and determined in the prior action * * *." *State Farm Fire & Cas. v. Reuter*, 299 Or 155, 158, 700 P2d 236 (1985). As to those issues, the earlier judgment is binding as to any determination that "was essential to the judgment." *Id.*

■ For either claim preclusion or issue preclusion to apply, the person against whom preclusion is asserted must

---

[2] Apparently, Ellinwood argued below that ORS 43.130(2) barred child's claim, and child included a response to that argument in her opening brief. On appeal, however, Ellinwood does not rely on the statute; although he briefly cites it as a statement of policy favoring finality of judgments, he offers no argument that the statutory analysis differs from the common-law analysis or that the statute is a basis for affirming the trial court's decision. Because he does not rely on the statute, we do not address it here. *State v. Krueger*, 170 Or App 12, 17, 12 P3d 53 (2000), *rev den*, 332 Or 240 (2001).

have been a party or in privity with a party to the earlier proceeding. *Bloomfield*, 339 Or at 511 (claim preclusion); *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (issue preclusion). The Supreme Court has emphasized the role of fundamental fairness in privity questions:

> "This court also has held that a person who was not a party to an earlier action but who was in 'privity' with a party to that earlier action also can be barred on claim preclusion grounds from bringing a second action. * * * An inherent limitation on using the concept of privity in such circumstances, however, is a concern about the fairness of binding a person to a judgment rendered in an earlier case in which he or she was not a party. As this court stated in *Wolff v. Du Puis*, 233 Or 317, 321, 378 P2d 707 (1963), privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include the other within the res judicata.' And that relationship is 'close enough' for purposes of preventing the third party from pursuing claims in a second trial 'only when it is realistic to say that the third party was fully protected in the first trial.' *Id.* at 322. Thus, even if the present plaintiffs can be said to have been in privity with [a party] in the earlier litigation, claim preclusion will not operate to bar their claims in the present action unless it is fundamentally fair to do so."

*Bloomfield*, 339 Or at 511 (footnotes and further citation omitted).

■        Privity "includes those who control an action although not parties to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims." *Wolff*, 233 Or at 322 (citing *Restatement of Judgments* § 83 (1942)). Because Ellinwood does not (and apparently could not) contend that child controlled the dissolution proceeding or was a successor in interest, privity exists here only if D'Amico represented child's interests in the dissolution proceeding—and only if she did so in such a manner that child was "fully protected" so that the application of issue preclusion is "fundamentally fair."[3] *See Bloomfield*, 339 Or at 511.

---

[3] It appears that this case presents a question of issue preclusion—that is, whether the determination of the issue of paternity in the dissolution proceeding bars child from seeking resolution of that issue in a separate paternity proceeding. In any event, because the privity question is essentially the same for claim

Neither this court nor the Supreme Court has addressed the question of privity under the circumstances presented here. The cases closest to the question have involved the state seeking to establish paternity and a child support obligation after an earlier determination in a dissolution proceeding has declined to find paternity or award support. *See State ex rel Moran v. Rushman*, 177 Or App 290, 292-93, 33 P3d 999 (2001), *rev den*, 333 Or 260 (2002); *Mares and Mares*, 131 Or App 439, 441-42, 886 P2d 17 (1994). In those cases, we concluded that the state was not bound by the earlier determinations because it was neither a party nor in privity with a party, but was representing its own interests in the subsequent proceeding. *Moran*, 177 Or App at 294; *Mares*, 131 Or App at 443-44.[4]

Courts in other states, however, have addressed the issue of privity in these circumstances, and the decided trend is that a child should not be deemed to be in privity with the mother. *See, e.g., Chance v. Gibson*, 99 SW3d 108, 111 (Tenn Ct App), *appeal den* (2002) (the child was not in privity with the mother in an earlier support proceeding in which the child was a minor and not a party); *Hall v. Lalli*, 194 Ariz 54, 59-60, 977 P2d 776, 781-82 (1999) (the child's paternity action was not barred by prior action initiated by the state because he was not in privity either with the state or his mother in the prior proceeding); *Gann v. Gann*, 705 So 2d 509, 512 (Ala Civ App 1997) (although adjudication of paternity in a divorce action bars any further claims by parties to the divorce action, it is not binding on the child unless the child is made a party to the divorce proceeding); *State on*

preclusion as for issue preclusion (here, whether D'Amico represented child's interests in the dissolution proceeding), we also rely on cases addressing privity in the context of claim preclusion.

[4] In *Shinall*, on which the trial court apparently relied below, an earlier proceeding initiated by the state Support Enforcement Division had determined that Shinall was the child's father. 148 Or App at 562. In that proceeding, the mother had filled out a paternity affidavit naming Shinall as the child's father, and Shinall had defaulted. *Id.* In a later filiation proceeding, the mother attempted to establish that a different man, Ball, was the biological father, and blood tests confirmed her allegation. *Id.* We nevertheless rejected the mother's and Shinall's efforts to set aside the earlier default judgment, stating that what they sought "to do through the filiation action against Ball is to circumvent the *res judicata* effect of paternity established in the prior judgment." *Id.* at 565. Thus, in *Shinall*, the mother and Shinall were parties to the earlier proceeding and sought to avoid determinations made in that proceeding. *Shinall* did not address privity and is different from this case, in which child was not a party to the earlier proceeding.

*Behalf of D.J.N. v. Redding,* 685 So 2d 1000, 1002 (Fla App 1997) (the child's right to a determination of paternity is not affected by a prior paternity action asserted by the child's mother); *In re Paternity of Amber J.F.,* 205 Wis 2d 505, 522, 557 NW2d 84, 89, *rev den,* 207 Wis 2d 286, 560 NW2d 275 (1996) (the child's paternity action was not barred by a prior paternity action initiated by her mother because the child was neither a party nor in privity with the mother in the prior action; fundamental fairness prevented the use of issue preclusion where the child had no opportunity to be heard in the prior litigation); *Dept. of Health v. Pentasuglia,* 193 W Va 621, 625, 457 SE2d 644, 648 (1995) (a child's paternity action, asserted in his own name, was not barred by an earlier paternity proceeding initiated by the mother); *Department of Human Resources v. Fleeman,* 263 Ga 756, 757, 439 SE2d 474, 475 (1994) (the child—and by extension, the state insofar as its claim for support is asserted on the child's behalf—are not collaterally estopped by a divorce decree from seeking child support where the child was not a party or represented in the divorce proceeding); *Simcox v. Simcox,* 131 Ill 2d 491, 496, 546 NE2d 609, 611 (1989) (children are not in privity with their parents in dissolution proceedings and, as such, are not bound by findings of paternity in such proceedings unless they were parties to the proceedings); *Ruddock v. Ohls,* 91 Cal App 3d 271, 284-85, 154 Cal Rptr 87, 96 (1979) (a determination of nonpaternity in an Oregon dissolution proceeding in which the child was not joined or represented by a guardian ad litem was preclusive between the former spouses, but did not foreclose the child from seeking to establish paternity in an action in California); *see also Restatement (Second) of Judgments* § 31 comment f (1982) (stating that a judgment in a divorce proceeding refusing child support based on the father's denial of paternity does not preclude the child's subsequent action for support where the child was not represented in the divorce proceeding).

The reasoning of the courts that have considered the issue is perhaps best summarized by the Arizona Supreme Court in *Hall.* The court began by noting that, although a mother and a child may have common objectives in a paternity proceeding, they do not necessarily have the same interests:

"Privity * * * is not a result of parties having similar objectives in an action but of the *relationship* of the parties to the action and the *commonality* of their interests. * * * Even though a desired *objective* of all paternity suits is the same—to establish the defendant's paternity—each party's *interests* for doing so differ significantly. Parties with common objectives but disparate interests might pursue an action with varying degrees of diligence. Even when the interests of the parties apparently overlap, a court should determine if there are additional, separate interests that would prevent a finding of privity."

194 Ariz at 58, 977 P2d at 780 (citations omitted; emphasis in original).

A child's interests include not only matters of inheritance and financial and medical support but also "intangible psychological and emotional benefits * * *, including establishing familial bonds and learning of cultural heritage. [A] child's interest in determining his or her father is fundamental, unique, and broader than the interests of all others." *Id.* at 59, 977 P2d at 781 (citations omitted). Although the mother may have a financial as well as an emotional interest in establishing paternity, the parents' relationship with each other may affect whether the mother's interests are truly aligned with the child's:

"[The mother] is often subject to pressures from her relationship with the father. These pressures may affect her decision to proceed with a paternity suit. A mother may decide to dismiss a pending paternity suit because she may hope for a continuing relationship with the father, or because her relationship with the father has deteriorated to the point that she wants to avoid contact with him. There may be pressure from community or family disapproval of the father, the relationship, or the paternity action. The mother may be deterred by the trouble, difficulty, and expense of maintaining the lawsuit and decide that she wants and has the means to raise the child independently. Moreover, the putative father may offer the mother an amount sufficient to induce her to settle the claim without an adjudication."

*Id.* Accordingly, a mother's and a child's interests in a paternity proceeding may even be in conflict. *Id.* Recognizing the "significant personal obstacles" that mothers may face in

paternity proceedings, the court concluded that it could not expect mothers always to protect children's interests and ignore their own, so mothers and children "lack the necessary commonality of interests to find them in privity." *Id.* at 60, 977 P2d at 782.

As this case illustrates, the Arizona court's observations regarding the complexity of the dynamics between the mother and the putative father in a paternity proceeding apply even more strongly when the paternity issue first arises and is resolved in a dissolution proceeding. In their efforts to untangle their legal relationship and overcome the emotional trauma that accompanies many dissolutions, the parties easily can lose sight of what is best for the children, despite their best intentions.

■■■■■ The burden to establish the requisite elements of issue or claim preclusion rests with the one seeking to invoke that rule. *See State Farm v. Century Home*, 275 Or 97, 104-05, 550 P2d 1185 (1976) (*Century Home*).[5] Those elements include that the relationship is "close enough" that it is realistic to say the interests of the person sought to be precluded were fully protected in the prior action, so that the application of preclusion to bar the claim is "fundamentally fair." *Bloomfield*, 339 Or at 511. For Ellinwood to prevail, the record must establish those elements as a matter of law. *See Century Home*, 275 Or at 105.

The record here establishes that child was *not* in privity with D'Amico. Although D'Amico represented to the court in the dissolution proceeding that she was acting in child's best interests—both in her decision not to contest Ellinwood's assertion of nonpaternity and in her claim that

---

[5] In *Century Home*, the court held that the person seeking to invoke preclusion principles has the burden to establish that the elements of preclusion have been satisfied. However, it also concluded that the party against whom preclusion is asserted has the burden to show that the party did not have a full and fair opportunity to be heard in the prior action. 275 Or at 105. We understand the burden of proof rule announced in *Century Home* to apply when preclusion is asserted against a party to the original action. Where, as here, preclusion is asserted against one claimed to be "in privity" with a party to the original action, it is incumbent on the one asserting preclusion to establish privity. *See State Farm Fire and Casualty Co. v. Paget*, 123 Or App 558, 562-63, 860 P2d 864 (1993), *rev den*, 319 Or 36 (1994) (party asserting issue preclusion had burden to prove it applied, including burden to prove privity).

she was financially and emotionally able to care for child—we cannot ignore the fact that the stipulated judgment was entered in a tumultuous dissolution proceeding in which D'Amico received a substantial monetary judgment. As the Arizona Supreme Court recognized, *Hall*, 194 Ariz at 59, 977 P2d at 781, such circumstances make it difficult, if not impossible, for a mother to fully protect a child's interests.

Moreover, because the record lacks any *evidence* regarding paternity, it would be fundamentally unfair to conclude that child's interests were fully protected. Indeed, the only "fact" supporting the judgment of nonpaternity was Ellinwood's denial that he was child's father—but D'Amico did not confirm the accuracy of that denial. Rather, she merely stipulated to the facts recited in the stipulated judgment, that is, to Ellinwood's denial. Accordingly, the trial court's finding that, in the dissolution proceeding, D'Amico "agreed, swore, and corroborated that Ellinwood was not [c]hild's legal father" finds no support in the record.

The nonidentity between child's and D'Amico's interests, the limited factual record supporting the declaration of nonpaternity, and child's total absence from the dissolution proceedings lead us to conclude that D'Amico and child were not in privity and that it would be fundamentally unfair to bind child to the outcome of that proceeding. *See Mares*, 131 Or App at 444 (where the state and the mother were not in privity and where the child was born during the marriage and the issue of paternity was resolved by the parties' affidavits stating that the husband was not the father, but no blood tests or other evidence was presented to support those statements, that uncontested dissolution proceeding was "not the type of proceeding to which the court should give preclusive effect on the issue" of paternity).

Reversed and remanded.