Argued and submitted January 3, affirmed March 20, 2003

In the Matter of the Custody of
Samuel Andrew McLaughlin,
nka Samuel Adam Schowalter.

Scott Andrew KNEEFEL,
*Respondent,*

*v.*

Diana Lee McLAUGHLIN,
nka Diana Lee Schowalter
and John Schowalter,
*Appellants.*

9710-71427; A115078

67 P3d 947

James N. Westwood argued the cause for appellants. With him on the briefs were Jody Stahancyk, Craig Wymetalek, and Stoel Rives, LLP, and Stahancyk, Gering, Rackner & Kent, PC.

Mark Johnson argued the cause for respondent. With him on the brief was Bennett, Hartman, Morris & Kaplan, LLP.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Schuman, Judge.

EDMONDS, P. J.

_____

* Deits, C. J., *vice* Kistler, J.

## EDMONDS, P. J.

Mother and father (appellants) appeal from a judgment of the trial court in which the court refused to vacate a stipulated visitation order that provides respondent, mother's former domestic partner, with visitation with S, appellants' son. They contend that, under the United States Supreme Court decision in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000),[1] respondent's rights under the visitation order were automatically terminated when father formally adopted mother's son and, therefore, the visitation order should be vacated as a matter of law. We affirm.

Mother adopted S in January 1995, when he was 12 months old. He has lived with her continuously since he was six months old. Respondent and mother became involved shortly after S's birth, and, beginning in 1994, respondent and mother lived together. In January 1997, mother and respondent broke off their relationship. Through an informal arrangement, respondent visited with S on a regular basis after the separation. After approximately eight months, mother decided to terminate visitation. Respondent responded by filing a petition requesting court ordered visitation with S pursuant to ORS 109.119 (1997).[2] In 1998, the parties settled the litigation by a stipulated order for visitation that allowed respondent some weekend visitation as well as some extended visits during the summer and holidays.

In 1999, mother met father, and they began cohabitating in November of that same year. They married in August 2000 and, following the marriage, they petitioned for father's adoption of S. The adoption was completed in October 2000. Shortly before the adoption, mother moved to modify the 1998 stipulated order. No action was ever taken on that motion. Shortly after the adoption, mother and father[3] moved for an order requiring respondent to show

---

[1] *Troxel* held that the application of a Washington statute that provided for court-ordered visitation by third persons over the objection of a natural parent violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 530 US at 75.

[2] That statute authorized courts to order visitation by a person with either an "ongoing personal relationship" with child or a "child-parent relationship."

[3] The parties stipulated to an order joining father as a necessary party.

cause why the 1998 order should not be vacated on the basis that, under *Troxel*, they have a fundamental liberty interest in deciding who has visitation with their son and, as a result, the visitation order had been terminated as a matter of law when father adopted S. In response, respondent argued to the trial court that it was incumbent on appellants to move to modify or terminate the visitation order based on a change of circumstances and a visitation arrangement that was in the best interests of S. The trial court denied appellants' motion to vacate, ruling that, as a matter of law, neither *Troxel* nor any provision of Oregon law automatically terminated respondent's visitation rights.

On appeal, appellants essentially make the same substantive arguments that they made to the trial court. However, respondent initially raises a procedural issue. He asserts that appellants' appeal is either taken from a nonappealable judgment or is moot. Specifically, he contends that the parties proceeded in the trial court under the understanding that the motion to show cause sought relief from a void judgment under ORCP 71 B(1)(d). However, appellants also filed a motion to modify the 1998 judgment before the entry of the judgment denying their motion to vacate the judgment in an attempt to modify or eliminate respondent's visitation rights. In response to that motion, the trial court continued respondent's visitation on a modified basis and denied appellants' motion to make the visitation solely at the will of appellants. That ruling has not been appealed. According to respondent, the denial of the motion to modify makes the motion to vacate moot or, alternatively, nonappealable as a "nonfinal" judgment unless the 1998 stipulated judgment is void. Based on that premise, respondent reasons that appellants cannot obtain the relief that they seek, *i.e.*, the vacation of the stipulated judgment, because the judgment is at most "voidable" and not "void." In contrast, appellants respond that they are *not* seeking relief from a "void" judgment; instead, they contend that the basis for their motion to vacate in the trial court was ORCP 71 B(1), which provides, in relevant part:

> "On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: * * * (e) [t]he

> judgment has been satisfied, released * * * or it is no longer equitable that the judgment should have prospective application."

Our review of the record does not support either party's argument regarding the procedural basis of the motion to vacate. Appellants' motion and accompanying memorandum are silent regarding any reliance on a ground specified in ORCP 71 B(1). We decline to review the trial court's ruling on a procedural basis that was not raised below. ORAP 5.45. Further, contrary to respondent's contention, the issue is not moot because the order denying the motion to vacate has continuing efficacy, *i.e.*, it operates to continue respondent's visitation rights. Also, the denial of the motion to vacate is an appealable order under ORS 19.205(1)(c) (a final order affecting a substantial right made after judgment). *Waybrant v. Bernstein*, 294 Or 650, 655, 661 P2d 931 (1983) (holding that an order denying a motion to vacate is appealable when "[t]he essence of the claim is not so much the substantive correctness of the original offending decsion, but rather the propriety of the court's refusal to vacate it").

Rather, we construe appellants' motion to vacate the stipulated judgment, as litigated in the trial court, to invoke the "inherent" authority of the trial court. ORCP 71 C provides:

> "This rule does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from a judgment, * * * or the power of a court to set aside a judgment for fraud upon the court."

Respondent's argument thus raises the question of whether the trial court erred in the exercise of its inherent authority when it denied appellants' motion to vacate the 1998 stipulated judgment.

■■ To answer the above question, we must first define the scope of a court's inherent authority to vacate a judgment. It is well settled that a trial court can exercise its inherent authority to vacate a judgment only to make a technical amendment, to correct an error of the court, or in other "extraordinary circumstances." *Condliff v. Priest*, 82 Or App

115, 118, 727 P2d 175 (1986). Here, the only available ground on which the trial court could have exercised its inherent authority to vacate the 1998 judgment was if "extraordinary circumstances" existed at the time of the entry of the stipulated judgment, or, arguably, if such circumstances are deemed to have occurred subsequently. "Extraordinary circumstances" typically involve some type of fraud or overreaching by one of the parties. *Blue Horse v. Sisters of Providence*, 113 Or App 82, 86-87, 830 P2d 611, *rev den*, 314 Or 727 (1992). As noted above, mother stipulated to the 1998 judgment. A stipulated judgment is subject to vacation under ORCP 71. However, the 1998 judgment, because it is a stipulated judgment, is a contract that has been approved by the court. It can be set aside only on grounds adequate to rescind a contract. *Erwin and Erwin*, 100 Or App 64, 67, 784 P2d 1109 (1990). Significantly, mother does not assert a typical ground for rescission of the agreement with respondent.

■ Moreover, we considered an argument similar to that made by appellants in *Vinson and Vinson*, 57 Or App 355, 644 P2d 635, *rev den*, 57 Or App 355 (1982). In that case, the issue was whether the trial court erred when it modified the division of military pension benefits pursuant to a United States Supreme Court decision decided subsequent to the entry of a final dissolution of marriage judgment. The trial court apparently held that the decision was an extraordinary circumstance that permitted it to modify an otherwise-final judgment under its inherent authority. We rejected that reasoning because of the principle of *res judicata*. We relied on the proposition that the fact that a judgment may be erroneous based on a subsequent decision of another court does not deprive the prevailing party of the ability to rely on that judgment when faced with a collateral attack. To hold otherwise would undermine the conclusive character of judgments and create uncertainty and confusion about their finality. Consequently, we said, for the purposes of the court's exercise of its inherent authority, "[w]e also hold that a United States Supreme Court decision that indicates that a prior final judgment of this court was erroneous is not [an extraordinary] circumstance." *Vinson*, 57 Or App at 361.

The reasoning in *Vinson* applies here to mother. The 1998 judgment was not void *ab initio*, nor is it a legal nullity

because of the decision in *Troxel*. It continues to have efficacy, *i.e.*, to reflect the agreement of mother and respondent. Consequently, the doctrine of *res judicata* operates to prevent her from contending successfully that a stipulated judgment that she entered into is no longer of any legal effect.

■　Father, however, was not a party to the stipulated judgment. Therefore, the doctrine of *res judicata* does not apply to him. The question then with regard to father is whether the decision in *Troxel* constitutes another legally cognizable "extraordinary circumstance," apart from fraud or duress, that permits the court to exercise its inherent authority to vacate the stipulated judgment on father's motion.[4] The answer to that question is "No" for the same reason. Despite the holding in *Troxel*, the judgment continues in effect as a valid judgment reflecting mother's agreement with respondent and defining his right to visitation in relationship to her fundamental interest as a parent. Because of its continuing effect on those parties, there exists no "extraordinary circumstance" that could authorize the trial court to vacate it based on *father's* exercise of his parental rights. Although father can object to visitation on his own behalf, he cannot affect or trump mother's court-approved agreement, which operates as an exercise of her *personal* fundamental parental rights. Accordingly, the trial court did not err when it denied father's motion to vacate the 1998 judgment that adjudicates visitation rights as between mother and respondent.[5]

　　Affirmed.

---

[4] We assume for purposes of discussion that father has standing to collaterally attack the judgment because of his status as a parent.

[5] Given the narrow scope of the issue on appeal in this case, we need not decide what other remedies father and mother may have.