Argued and submitted September 2, motion to dismiss appeals granted; appeals
dismissed November 25, 2009

In the Matter of
K. A. S., K. P. S., and J. C. S., III,
Minor Children.

DEPARTMENT OF HUMAN SERVICES,
*Respondent,*

*v.*

B. A. S.,
fka B. S.;
and J. S.,
*Appellants.*

Klamath County Circuit Court
9700237JV3, 9700237JV4, 9700237JV5;
Petition Numbers 0600167M, 0600168M;
A141515 (Control)

In the Matter of
K. A. S., K. P. S., and J. C. S., III,
Minor Children.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. S.,
*Appellant.*

Klamath County Circuit Court
9700237JV3, 9700237JV4, 9700237JV5;
Petition Numbers 0600167M, 0600168M;
A142307

221 P3d 806

■■■■■■

■■■■■■

Megan L. Jacquot argued the cause and filed the brief for appellant J. S.

Daniel J. Casey argued the cause and filed the brief for appellant B. A. S.

Inge Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

■■■■■■

## ARMSTRONG, J.

In this consolidated appeal, mother and father (parents) appeal the juvenile court's denial of their motions under ORS 419B.923 to set aside a judgment terminating their parental rights to their three children. The state has filed a motion to dismiss the appeal as moot under ORS 419B.923(3), given the intervening adoption of the children. Parents oppose the state's motion, arguing that application of ORS 419B.923(3) in this case violates procedural due process. As explained below, we agree with the state that the appeal is moot and therefore dismiss parents' appeals.

Because the parties' dispute centers on ORS 419B.923, it is helpful to first set out the relevant text of that statute. It provides, in part:

"(1) Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to:

"(a) Clerical mistakes in judgments, orders or other parts of the record and errors in the order or judgment arising from oversight or omission. These mistakes and errors may be corrected by the court at any time on its own motion or on the motion of a party and after notice as the court orders to all parties who have appeared. During the pendency of an appeal, an order or judgment may be corrected as provided in subsection (7) of this section.

"(b) Excusable neglect.

"(c) Newly discovered evidence that by due diligence could not have been discovered in time to present it at the hearing from which the order or judgment issued.

"(2) A motion to modify or set aside an order or judgment or request a new hearing must be accompanied by an affidavit that states with reasonable particularity the facts and legal basis for the motion.

"(3) A motion to modify or set aside an order or judgment must be made within a reasonable time except no order or judgment pursuant to ORS 419B.527 may be set aside or modified during the pendency of a proceeding for

the adoption of the ward, nor after a petition for adoption has been granted.

"* * * * *

"(7) A motion under subsection (1) of this section may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court. The moving party shall serve a copy of the motion on the appellate court. The moving party shall file a copy of the trial court's order or judgment in the appellate court within seven days of the date of the trial court order or judgment. Any necessary modification of the appeal required by the court order or judgment must be pursuant to rule of the appellate court.

"(8) This section does not limit the inherent power of a court to modify an order or judgment within a reasonable time or the power of a court to set aside an order or judgment for fraud upon the court."

With that statutory background in mind, we turn to the facts and procedural history of this case. Mother's and father's parental rights to their three children—all under the age of four at the time of trial—were terminated on the basis of unfitness and neglect, following an eight-day trial in January 2007. Mother and father appealed the resulting termination judgment. *See State ex rel Dept. of Human Services v. J. S.*, 225 Or App 115, 200 P3d 567, *rev den*, 346 Or 157 (2009) (the direct appeal). After the direct appeal was briefed and argued, we, on our own motion, ordered a new transcript to be prepared from the audio recording of the termination trial because of concerns that had been raised about the accuracy of the original transcription. *Id.* at 127. That order, dated July 14, 2008, also allowed the parties to move to correct the new transcript pursuant to ORS 19.370(5) and to submit supplemental briefing, after the new transcript settled, for the purpose of modifying their previous arguments in light of any differences between the two transcripts. The new transcript settled on August 29, 2008, and mother and the state each submitted supplemental materials in accordance with the order; father declined to do so.

Meanwhile, in the juvenile court, mother and father filed the two post-judgment motions that are the subject of

this appeal. First, on September 2, 2008—just a few days after the new transcript in the direct appeal settled—mother and father filed a *pro se* "Motion for New Trial Under ORS 419B.923[,] ORS 419A.200[, and the] 14th Amendment [to the] United States Constitution."[1] The motion asserted that "the oral record of the previous termination trial is not sufficiently adequate to provide the parents with a transcript which represents a full, true and accurate record of the proceedings, thus denying them their statutory and constitutional rights to appeal the judgment terminating their parental rights." That assertion was based, in part, on the many times that the words "unintelligible" or "inaudible" appeared in the transcript, indicating missing portions of the record. In support of their motion, parents attached, among other things, a letter from an asserted forensics expert expressing concerns about the audio-recording system used to record the termination trial and concluding that, "[w]ith the substantial number of places where the record is unintelligible, from either system failure or operator error, it is not possible for the transcripts to represent a full, true and accurate record of the proceedings[.]"

Neither parent served a copy of the motion on this court as required by the statute. *See* ORS 419B.923(7) ("The moving party [of a motion to modify or set aside a judgment under ORS 419B.923(1)] shall serve a copy of the motion on the appellate court."). However, over three months later, on December 22, 2008, mother filed a motion in this court to hold the direct appeal in abeyance, noting that the juvenile court had scheduled a hearing on parents' post-judgment motion for January 13, 2009. *See* ORAP 2.22(2)(b) ("Any party to the appeal may request the appellate court to hold the appeal in abeyance pending disposition of the motion [under ORS

---

[1] The juvenile court originally denied parents' motion on September 5, 2008, without a hearing. On September 22, 2008, after retaining counsel, father filed a motion to reconsider the motion, and, on September 30, 2008, a "supplement" to that motion to reconsider, citing ORS 419B.923(1)(a) and (7). Mother did not originally join in father's motion for reconsideration; instead, she appealed the court's September 5 order denying the motion. However, she later voluntarily dismissed her appeal of that order, joined in father's motion to reconsider, and, on January 7, 2009, filed her own "Amended Motion in Support of Motion for New Trial/Motion to Set Aside Judgment." (Some capitalization omitted.) Evidently, parents' motion to reconsider was granted because, as noted later, the court held a hearing on the merits of parents' motions on January 13, 2009.

419B.923] or allow the appeal to go forward."). We denied that motion, and, on January 7, 2009, affirmed the termination judgment in a written opinion.

On January 13, 2009—six days after we issued our opinion affirming the termination judgment—the juvenile court held a hearing on parents' motion to set it aside. At the hearing, the state moved to dismiss parents' motion, and the court ruled in favor of the state. Referring to our order requiring the preparation of a new transcript of the termination trial and allowing the parties to submit supplemental briefing on direct appeal, the court concluded that "the harm that's been complained about has been remedied or there was an opportunity to remedy the harm at the appellate level." The court further concluded that there was no "showing of error or unfairness or miscarriage of justice at this point" and "the motion probably is not timely, as well." On February 9, 2009, the court entered a judgment denying parents' "motions to set aside judgments terminating parental rights and for new trials on the petitions to terminate parental rights."

The second motion that is the subject of this consolidated appeal was filed by parents in the juvenile court on April 28, 2009—a few weeks after the Supreme Court denied review of our decision in the direct appeal, but before the appellate judgment issued on June 15, 2009. That motion also sought relief from the termination judgment under ORS 419B.923. Alleging "newly discovered evidence," parents (once again appearing *pro se*) asserted that they were denied a "fundamentally fair proceeding" because, according to billing statements from the original transcriptionist, father's appellate counsel did not receive the entirety of the original transcript of the termination trial. The juvenile court concluded that it lacked jurisdiction "to hear further matters in the termination of parental rights proceedings," and, on April 30, 2009, entered an order dismissing parents' motion.

Mother and father now appeal the February 9 judgment and the April 30 order. *See State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 168 P3d 798 (2007) (deciding appeal of trial court's denial of motion to set aside a judgment under ORS 419B.923). On August 13, 2009, the state filed a motion

to dismiss parents' appeals, asserting that, because adoption proceedings involving the children were completed on August 5, 2009,[2] the case is moot under ORS 419B.923(3). According to the state, ORS 419B.923(3) prohibits the juvenile court from setting aside the termination judgment—given the intervening adoption—and, as a result, our decision in this appeal can have no practical effect on the rights of the parents. In other words, even if we were to reverse and remand the juvenile court's denial of either of parents' motions, on remand, the juvenile court now lacks the authority—by virtue of ORS 419B.923(3)—to set aside the termination judgment. Thus, in the state's view, the case is moot. *See Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993) (explaining that case is moot if court's decision "no longer will have a practical effect on or concerning the rights of the parties").

■ Parents apparently agree that, as a statutory matter, ORS 419B.923(3) precludes the juvenile court from addressing their entitlement to have the termination judgment set aside under ORS 419B.923(1). However, parents assert that "the denial of [their] right to procedural due process in the termination appeal precludes the procedural bar in ORS 419B.923(3) from operating in the first place." They reason that,

"[i]f the lack of a full and accurate trial transcript denied [parents their] right[s] to procedural due process in the termination appeal—as [they] assert[ ] in [their] constitutional claims—then the termination judgment is invalid, as is the subsequent adoption, and the procedural bar of ORS 419B.923(3) does not apply."

We begin our discussion with ORS 419B.923. The parties focus on subsection (3) of that statute, which, again, provides:

"A motion to modify or set aside an order or judgment must be made within a reasonable time *except no order or judgment pursuant to ORS 419B.527 may be set aside* or modified during the pendency of a proceeding for the adoption of the ward, nor *after a petition for adoption has been granted.*"

---

[2] The state submitted an affidavit to that effect, which parents do not dispute.

(Emphasis added.) No one disputes—and we agree—that the judgment terminating parents' parental rights is a judgment "pursuant to ORS 419B.527."[3] Thus, the directive in subsection (3) appears to unequivocally bar the court from setting aside the termination judgment in this case.

The statutory analysis does not end there, however. Although the parties do not address it, we cannot ignore the potential effect of subsection (8). *See Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998) ("[T]he parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law."); *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). That subsection provides:

> "This section does not limit the inherent power of a court to modify an order or judgment within a reasonable time or the power of a court to set aside an order or judgment for fraud upon the court."

The obvious question raised by subsection (8) is whether it operates to authorize the juvenile court to set aside the termination judgment in this case, notwithstanding the prohibition in subsection (3).

Notably, subsection (8) differentiates between the court's power *to modify* a judgment and the court's power *to set aside* a judgment. Specifically, a court's power to set aside a judgment appears, from the text of the statute, to be limited to circumstances involving "fraud upon the court," whereas the court's inherent power to modify a judgment is restricted only by the reasonableness of the time involved. Thus, because fraud upon the court is not alleged in this case, the

---

[3] ORS 419B.527 provides, in part:

"(1) After the entry of an order terminating the rights of the parent or parents of the ward, the court may:

"(a) Place the ward in the legal custody and guardianship of a public or private institution or agency authorized to consent in loco parentis to the adoption of the children."

Here, the termination judgment permanently committed the children to the legal custody and guardianship of the Department of Human Services (DHS), with the authority to consent *in loco parentis* to their adoption.

only way subsection (8) could—even arguably—operate to allow the court to set aside the judgment notwithstanding the intervening adoption proceedings and resulting bar of subsection (3) is if "modifying" the judgment within the meaning of subsection (8) could reasonably be understood to also encompass setting it aside.

Looking to the text in context, *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009), that construction of subsection (8) appears doubtful. First, the ordinary meaning of the term "modify" does not easily encompass such an understanding. *See id.* at 175 (terms that are not statutorily defined are given their plain, natural, and ordinary meaning). The dictionary defines "modify," as pertinent here, to mean "to make minor changes in the form or structure of : alter without transforming," "to make a basic or important change in : ALTER," "to change the form or properties of for a definite purpose." *Webster's Third New Int'l Dictionary* 1452 (unabridged ed 2002). In addition, an examination of the other provisions of the statute reveals that the legislature consistently and precisely referred to the powers of modification and set aside separately, indicating that it did not intend the former to encompass the latter in subsection (8).[4]

On the other hand, construing the term "modify" in the first phrase of the subsection to also include setting aside the judgment—notwithstanding the specific reference to the latter in the second phrase—does not necessarily render the second phrase "meaningless surplusage." *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230, 119 P3d 790 (2005) ("As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage."); ORS 174.010 (in construing a statute, the court is not to "omit what has been inserted" and,

---

[4] *See, e.g.*, ORS 419B.923(1) ("Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may *modify or set aside* any order or judgment made by it. Reasons for *modifying or setting aside* an order or judgment include * * *."); ORS 419B.923(2) ("A motion to *modify or set aside* an order or judgment or request a new hearing must be accompanied by an affidavit[.]"); ORS 419B.923(3) ("A motion to *modify or set aside* an order or judgment must be made within a reasonable time except no order or judgment pursuant to ORS 419B.527 may be *set aside or modified* during the pendency for the adoption of the ward, nor after a petition for adoption has been granted.") (Emphasis added as to all.)

"where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"). Specifically, the first phrase can be read to preserve a court's inherent power to set aside a judgment *for reasons other than fraud upon the court* in the same way that it preserves the court's ability to make other "modifications"—that is, as long as it was exercised within a reasonable time—whereas, the second phrase can be understood to preserve a court's authority to set aside a judgment for fraud upon the court *at any time.*

The legislative history of ORS 419B.923 provides little guidance. The statute was enacted in 2001 as part of a comprehensive bill drafted by the Juvenile Code Revision Work Group of the Oregon Law Commission to establish consistent rules of procedure in juvenile court dependency cases. *See* Or Laws 2001, ch 622; Audio Recording, House Committee on Judiciary Committee, Subcommittee on Criminal Law, HB 2611, Feb 15, 2001, http://www.leg.state.or.us/listn/archive/archive.2001s/HJUDCR-200102150759.ram, at 1:04 (statement of Sen Kate Brown). As one member of the work group explained, the bill had three purposes: (1) to bring together all of the statutes governing procedures in juvenile court dependency cases into one place; (2) to make clear that the Oregon Rules of Civil Procedure do not apply in these cases; and (3) to amend existing procedural statutes by "incorporating certain provisions of the ORCP where it is appropriate and necessary to carry out the purposes of the juvenile court." *Id.* at 1:08 (statement of Michael Livingston, Oregon Department of Justice).

Section 33, the provision of the bill that became ORS 419B.923, is an example of the latter. At the time, the court's authority to modify or set aside orders in juvenile dependency cases was set out in ORS 419B.420 to 419B.426.[5]

---

[5] *Former* ORS 419B.420 (1999), *repealed by* Or Laws 2001, ch 622, § 57, provided:

"Except as provided in ORS 419B.423 and 419B.426, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct."

*Former* ORS 419B.426 (1999), *repealed by* Or Laws 2001, ch 622, § 57, provided:

"No order pursuant to ORS 419B.527 may be set aside or modified during the pendency of a proceeding for the adoption of the child, nor after a petition for adoption has been granted."

Although that series of statutes contained a provision similar to the portion of ORS 419B.923(3) at issue in this case—that is, one prohibiting the court from setting aside or modifying an order under ORS 419B.527 after an adoption petition has been granted, *see former* ORS 419B.426—it did not contain a corresponding analog to subsection (8). A section-by-section analysis of HB 2611 prepared by the Oregon Law Commission explains that section 33 "substantially reworks the provisions of ORS 419B.420 and ORCP 71 to specify procedures for relief from judgments and orders." Testimony, Senate Committee on Judiciary, HB 2611, Apr 30, 2001, Ex I (Section-by-Section Analysis, House Bill 2611-1, adopted by the Oregon Law Commission, Apr 24, 2001). With respect to subsection (8) specifically, the analysis states only that it was "adopted from ORCP 71 C and allows the court to exercise its inherent power to modify or set aside for fraud on the court." *Id.*[6]

ORCP 71 C contains language very similar to that used in ORS 419B.923(8). It provides:

> *"This rule does not limit the inherent power of a court to modify a judgment within a reasonable time*, or the power of a court to entertain an independent action to relieve a party from a judgment, or the power of a court to grant relief to a defendant under Rule 7 D(6)(f), *or the power of a court to set aside a judgment for fraud upon the court."*

(Emphasis added.) Our case law interpreting ORCP 71 C provides some support for the notion that reservation of the court's inherent power to modify includes the power to vacate. *See, e.g., Kneefel v. McLaughlin*, 187 Or App 1, 5, 67 P3d 947 (2003) (construing the appellants' motion to vacate a stipulated judgment to invoke the inherent authority of the trial court to modify the judgment under ORCP 71 C); *see also Taylor v. Morrison*, 188 Or App 519, 524 n 1, 72 P3d 654

---

[6] The notion, expressed in that statement, that the court's inherent power to *modify* can be exercised only in the event of fraud upon the court is decisively contradicted by the text of subsection (8). Surprisingly, the section-by-section analysis presented to the legislature does not address the interplay between subsections (3) and (8) at all; with respect to subsection (3), it states only that it "requires the motion to be made within a reasonable time," a requirement that did not appear in *former* ORS 419B.420. Nor was the issue discussed during the legislature's consideration of the bill.

(2003) (noting that, "[a]lthough the wording of ORCP 71 C refers to the authority of the court to 'modify' the judgment, the cases interpreting the rule have concluded that the authority recognized in the rule includes the authority to vacate a judgment entirely" and citing, *inter alia, Kneefel*). *But see J. B. D. v. Plan Loving Adoptions Now, Inc.*, 218 Or App 75, 84, 178 P3d 266, *rev den*, 344 Or 670 (2008) (declining to decide whether the plaintiff's motion to set aside an adoption judgment could be construed as a motion to modify that judgment for purposes of ORCP 71 C).

The Supreme Court's recent decision in *State v. Ainsworth*, 346 Or 524, 213 P3d 1225 (2009), although ultimately decided on a much narrower basis, reflects some skepticism of the proposition that the power to modify a judgment includes the power to set it aside. In that case, the court considered whether the inherent power of a trial court to modify a judgment as addressed in ORCP 71 C included the authority to vacate the judgment and reenter a substantially identical judgment so as to extend the time for appeal. Answering that question in the negative, the court concluded:

> "First, the express terms of ORCP 71 C refer to the trial court's inherent power 'to modify' a judgment. Here, the trial court did not modify the terms of the judgment in any way—rather, it subsequently entered a judgment that was identical in substance to the original one. Second, even if the trial court's reentry of the identical judgment could qualify as a 'modification' of the judgment, ORCP 71 C is a *reservation* of inherent trial court authority, not a *source* of inherent authority. That provision thus preserves whatever inherent authority a trial court had before the enactment of ORCP 71 C, but it does not add to that authority."

*Id.* at 532-33 (emphasis in original). Applying that principle, the court affirmed the viability of *Far West Landscaping v. Modern Merchandising*, 287 Or 653, 601 P2d 1237 (1979), decided before the enactment of the rule, holding that a trial court "has no inherent authority to vacate a properly entered judgment and then reinstate the identical judgment, when the sole purpose for doing so is to extend the statutorily fixed time to appeal for a party who failed to check the record and

determine that judgment had been entered." *Ainsworth*, 346 Or at 533.[7]

Thus, to the extent that prior judicial interpretation of ORCP 71 C is relevant context for interpreting ORS 419B.923(8), even if the court's power to "modify" that is recognized in that subsection can be understood to include vacating the judgment entirely, unless the court possesses inherent authority to vacate the judgment under these circumstances, subsection (8) cannot negate the express prohibition in subsection (3). Based on our cases, it does not appear that vacating the judgment in this case would fall within the scope of the court's inherent powers.

■ As we explained in *Kneefel*:

"It is well settled that a trial court can exercise its inherent authority to vacate a judgment only to make a technical amendment, to correct an error of the court, or in other 'extraordinary circumstances.' *Condliff v. Priest*, 82 Or App 115, 118, 727 P2d 175 (1986). Here, the only available ground on which the trial court could have exercised its inherent authority to vacate the 1998 judgment was if 'extraordinary circumstances' existed at the time of the entry of the stipulated judgment, or, arguably, if such circumstances are deemed to have occurred subsequently. 'Extraordinary circumstances' typically involve some type of fraud or overreaching by one of the parties. *Blue Horse v. Sisters of Providence*, 113 Or App 82, 86-87, 830 P2d 611, *rev den*, 314 Or 727 (1992)."

187 Or App at 5-6. *Cf. Kelly v. Owens*, 175 Or App 103, 109, 27 P3d 514, *rev den*, 332 Or 631 (2001) (noting that "[d]uress, breach of fiduciary duty, and gross inequity also constitute

---

[7] Compare *Stevenson v. U. S. National Bank*, 296 Or 495, 677 P2d 696 (1984), in which the Supreme Court upheld the trial court's authority, under ORCP 71 *A and C*, to set aside the judgment and reenter a substantially similar one 30 days later, where the trial court mistakenly entered the judgment when the matter was still under advisement and there was nothing to indicate that the court's sole purpose in doing so was to extend the time for appeal. *See also Amvesco, Inc. v. Key Title Co.*, 69 Or App 740, 745, 687 P2d 1121 (1984) (holding that the trial court, in entering judgment affirming an earlier judgment for an award of attorney fees after having discovered that it mistakenly entered the earlier judgment before the expiration of time for the filing of objections, had the inherent power under ORCP 71 C's modification authority to "change the effective date of the judgment without vacating or setting aside the judgment").

'extraordinary circumstances' that will warrant exercise of a court's inherent power to modify a judgment"). No equivalent allegations are presented by parents' motions in this case. Nor does it appear that the allegations that parents did present—*viz.*, that the audio recording of the trial was deficient and that father's counsel did not receive all of the pages of the *original* transcript, resulting in a violation of their due process rights—would qualify in this case as legally cognizable "extraordinary circumstances."

The latter problem, if any, was presumptively remedied by our order of a new transcript. With regard to alleged deficiencies in the audio recording itself, as discussed in more detail below, those concerns could have been brought to our attention during the pendency of the direct appeal, before the commencement of the adoption proceedings involving the children. *See Vinson and Vinson*, 57 Or App 355, 361, 644 P2d 635, *rev den*, 293 Or 456 (1982) (concluding that a trial court's inherent power to relieve a party from a final judgment "may not be exercised as a substitute for an appeal, unless the appellant shows that extraordinary circumstances prevented his appeal"; holding that "this rule applies to motions made under ORCP 71 B and 71 C to overcome the *res judicata* effect of a final judgment").

In sum, given those factors, we conclude that it was not within the scope of the court's inherent power to vacate the judgment in this case; therefore, ORS 419B.923(8) cannot be read to "override" the provision of ORS 419B.923(3) and defeat the state's mootness argument.

■ The question remains whether application of ORS 419B.923(3) in this case violates parents' rights to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution. We understand parents to be arguing that application of ORS 419B.923(3) in this case violates due process because it denies them a mechanism for challenging the validity of the underlying termination judgment, which, if successful, would invalidate the adoption judgment. The issue thus reduces to this: Did the state violate parents' due process in this case by conditioning the availability of the set-aside remedy under ORS 419B.923 on the absence of an adoption judgment? Or, stated another

way, is due process satisfied where the ability of parents to obtain redress in the trial court under ORS 419B.923 for an alleged error in the termination trial was limited to the time period before the adoption petition was granted?[8]

 "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' * * * interests within the meaning of the Due Process Clause of the * * * Fourteenth Amendment." *Mathews v. Eldridge*, 424 US 319, 332, 96 S Ct 893, 47 L Ed 2d 18 (1976). When analyzing a claim under the Due Process Clause, the court must first decide whether the petitioner has been deprived of a liberty interest protected by the constitution; the court then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 US 454, 460, 109 S Ct 1904, 104 L Ed 2d 506 (1989); *see also Alexander v. Board of Parole*, 205 Or App 443, 452, 134 P3d 1055, *rev den*, 341 Or 449 (2006) ("Due process is flexible and calls for such procedural protections as the particular situation demands."). In making the latter determination, we consider three factors: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation of that interest, including the probable value of additional safeguards; and (3) the countervailing public interest. *Mathews*, 424 US at 335; *see also Santosky v. Kramer*, 455 US 745, 758-68, 102 S Ct 1388, 71 L Ed 2d 599 (1982) (applying that test to determine standard of proof required in parental termination proceedings).

With regard to the first question, the United States Supreme Court is "unanimously of the view that 'the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment.' " *M. L .B. v. S. L. J.*, 519 US 102, 119, 117 S Ct 555, 136 L Ed 2d 473 (1996) (quoting *Santosky*, 455 US at 774 (Reinquist, J., dissenting)). *See also State ex rel Juv. Dept. v. Geist*, 310 Or 176, 186, 796 P2d 1193 (1990) ("The permanent termination of parental rights is one of the most drastic actions the state can

_____

[8] Although the statute also precludes the court from setting aside a judgment during the *pendency* of an adoption proceeding, the application of that condition is not at issue in this case.

take[.]"). Thus, the only issue is whether the procedures for depriving parents of that liberty interest in this case were constitutionally sufficient.

In *Geist*, the Oregon Supreme Court determined that due process demands a termination proceeding that is "fundamentally fair." *Id.* at 189 (citing, generally, *Santosky*, 455 US at 753-54; *Lassiter v. Department of Social Services*, 452 US 18, 33, 101 S Ct 2153, 68 L Ed 2d 640 (1981)). "The essence of fundamental fairness is the opportunity to be heard at a meaningful time and in a meaningful manner." *Geist*, 310 Or at 189-90.

Applying that standard in *State ex rel Juv. Dept. v. Kopp*, 180 Or App 566, 576-77, 43 P3d 1197 (2002), we concluded that reading ORS 419B.524 (2001), *amended by* Or Laws 2003, ch 396, § 89,[9] to deprive a terminated parent of standing to seek an order modifying or setting aside the termination judgment under the predecessor to ORS 419B.923(1)—*former* ORS 419B.420—would have the effect of denying that parent a "fundamentally fair" termination proceeding. We reasoned, in part, that a hearing in the trial court under *former* ORS 419B.420 is "best suited for providing the parent with the required 'opportunity to be heard at a meaningful time and in a meaningful manner,'" because, for example, it would allow a parent to develop a factual record relating to the asserted defect. *Id.* at 578 (quoting *Geist*, 310 Or at 189-90). We also noted that such a proceeding was likely to be the most expeditious method for resolving the challenge and that "some errors in trial court proceedings could be asserted *only* in a set-aside proceeding, either because they were not detected within the time limit for filing a notice of appeal or otherwise could not be raised on direct appeal from a termination judgment." *Kopp*, 180 Or App at 579 (emphasis in original). Thus, "consistently with due process, as well as with the need for expeditious resolution of

---

[9] ORS 419B.524 (2001) provided:

"Unless there is an appeal from the order terminating the rights of the parent or parents, the order permanently terminates all rights of the parent or parents whose rights are terminated and the parent or parents have no standing to appear as such in any legal proceeding concerning the child."

parental rights termination proceedings," we adopted a construction of ORS 419B.524 that would afford a parent whose rights had been terminated standing to file a motion to set aside the judgment under *former* ORS 419B.420. *Id.*

*Kopp*, however, is not dispositive of the precise issue presented here, that is, whether, by precluding the availability of a set-aside of the termination judgment under ORS 419B.923 *after adoption proceedings have been completed*, the state has denied parents a "fundamentally fair" termination proceeding in this case. We return to the *Mathews* factors to resolve that question.

Unquestionably, the interest at stake is a "commanding" one. *Santosky*, 455 US at 758-59. As the court has said with respect to termination of parental status, "Few forms of state action are both so severe and so irreversible." *Id.* at 759; *see also M. L. B.*, 519 US at 121 (noting that "parental status termination is irretrievably destructive of the most fundamental family relationship" (internal quotation marks and brackets omitted)).

However, we must balance that interest against the risk of erroneous deprivation—in light of the procedures and processes available—as well as the countervailing interests of the state. *Mathews*, 424 US at 335. In this case, the risk of error inherent in precluding parents' access to a set-aside under ORS 419B.923 is minimal: Parents were entitled to—and did, in fact—appeal the termination judgment. The errors parents assert in their motions to set aside the judgment in the trial court were readily—indeed, properly—addressed in the context of that direct appeal. Specifically, the crux of parents' first motion to set aside was that, because of deficiencies in the oral recording system, they were denied an adequate transcript with which to effectively exercise their right to appeal the termination judgment. ORS 19.420(3) provides a specific avenue to address that claim:

> "Whenever it appears that an appeal cannot be prosecuted, by reason of the loss or destruction, through no fault of the appellant, of the reporter's notes or audio records, or of the exhibits or other matter necessary to the prosecution of the appeal, the judgment appealed from may be reversed and a new trial ordered as justice may require."

Parents became aware of the alleged deficiencies in the oral recording system while their appeal was under consideration by this court. That the newly ordered transcript on appeal had settled before they discovered the asserted problem did not preclude them from seeking relief under ORS 19.420. In short, ORS 19.420(3) provided a procedural mechanism by which to address the precise problem raised by parents' trial court motion. And, if it was warranted, this court could have granted parents the particular relief they sought—that is, reversal of the termination judgment and a new trial. Parents, however, failed to seek relief under that statute.

With respect to parents' second motion—alleging that father's counsel did not receive the entirety of the original transcript as evidenced by the transcriptionist's billing statement—those concerns were addressed by this court's ordering of a new transcript for the purpose of considering parents' appeal. Parents' motion does not assert that there were similar deficiencies in the new transcript or otherwise explain why the error complained of was not adequately addressed by that process.

Moreover, after the Supreme Court denied review of our decision affirming the termination judgment, parents could have moved to stay the issuance of the appellate judgment, pending resolution of their ORS 419B.923 motions. ORS 19.270(6)(c) (appellate court may "[s]tay enforcement of the appellate judgment pending disposition of the matter by the Supreme Court of the United States or *for such other time as the Oregon appellate court may deem appropriate*" (emphasis added)); *see also* ORS 19.450(2) ("As to appeals from circuit and tax courts, the appellate judgment is effective when a copy of the appellate judgment is entered in the court's register and mailed by the State Court Administrator to the court from which the appeal was taken."). The effect of such a stay, if granted, would be to preclude the adoptions from proceeding, thus eliminating the problem created by ORS 419B.923(3). *See* ORS 109.316(1)(b), (3) (DHS, "acting in loco parentis, may consent to the adoption of a child who has been" "[p]ermanently committed to it by order of a court of competent jurisdiction" and no other consent is required); ORS 419B.527(1)(a) (order placing child in the legal custody of an agency authorized to consent *in loco parentis* to the

adoption of children after parental rights have been terminated is a "permanent commitment" for purposes of ORS 109.316); ORS 419B.527(2) ("If the rights of only one parent have been terminated, the authority to consent to the adoption of the ward as provided in subsection (1)(a) of this section is effective only with respect to the parent whose rights have been terminated.").

As mother pointed out at oral argument, parents did file a motion to stay our *consideration* of the direct appeal, and that motion was denied. It does not follow from that denial, however, that it was futile for parents to request a stay of the appellate *judgment* after our decision affirming the terminations was announced and the Supreme Court denied review. At that point, parents were fully aware of the potential conflict that would be set in motion if the appellate judgment issued: Specifically, issuance of the judgment would allow adoption of the children to proceed, notwithstanding that the appeal of parents' motions under ORS 419B.923—which, if successful, would vacate the judgment that formed the basis for those adoptions, *see* ORS 419B.527—was still pending. The reasons for obtaining a stay were thus different—and significantly more compelling—at that stage in the proceedings than when the earlier motion was filed.

Understood in that context, the probable value of the continuing availability of the procedure set out in ORS 419B.923 is minimal. *Cf. Bennett v. Board of Optometry*, 125 Or App 66, 71, 865 P2d 362 (1993), *rev den*, 318 Or 582 (1994) (holding that an optometrist contesting the revocation of his license was not denied his procedural due process rights where he was given the opportunity for hearing but failed to request one within the deadline period).

Finally, turning to the public interest at stake, both the United States Supreme Court and the Oregon appellate courts have emphasized that the state's interest in finality is "unusually strong" in cases involving child custody. *See Lehman v. Lycoming County Children's Services*, 458 US 502, 513-14, 102 S Ct 3231, 73 L Ed 2d 928 (1982) (few things are as detrimental to children's development as uncertainty about their living situation); *Geist*, 310 Or at 186. In *Geist*,

the court held that challenges to the adequacy of appointed trial counsel in termination proceedings must be reviewable on direct appeal, reasoning as follows:

> "Any delay in achieving finality in a termination case adversely affects the rights of all the parties. Delay certainly will weaken the bonds between parents and children by lengthening their separation. Whether or not the eventual result is termination, protracted litigation extends uncertainty in the child(ren)'s life. Where a termination has been affirmed on direct appeal, procedures allowing further litigation or collateral attacks would delay the finality of the termination order and, thus, also delay the possibility of permanent adoption with the probable effect of reducing the chances for successful integration into an adoptive family."

*Id.* at 186-87. Additionally, the public's considerable interest in maintaining the finality of adoption judgments is clearly reflected in legislative enactments. *See, e.g.*, ORS 109.381(2) (restricting the ability of a party to an adoption to, "either by collateral or direct proceedings, question the validity of a judgment of adoption"); ORS 109.381(3) (providing that, one year after entry of judgment of adoption, adoption shall be binding on all persons, and no person shall question the validity of the adoption for any reason); *J. B. D.*, 218 Or App at 80 ("[O]ne of the legislative policies reflected in the adoption statutes is to promote finality to adoption judgments."). Here, the disruption and uncertainty that would be created by allowing the trial court to set aside the termination judgment—after the judgment has been affirmed on appeal and after the children have been adopted—is manifest.

On balance, given the significant and profound interest in achieving finality for the children—and the alternative procedural protections that were available to parents in this case—the state did not run afoul of due process by narrowly limiting parents' right to obtain a set-aside under ORS 419B.923 to the time period before the adoptions of the children were complete. Due process is not offended by the application of ORS 419B.923(3) in this instance.

Motion to dismiss appeals granted; appeals dismissed.