Argued and submitted October 6, 2009, judgment vacating termination of mother's parental rights reversed; otherwise affirmed February 17, 2010

In the Matter of C. J.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Appellant*
*Cross-Respondent,*

*v.*

J. L. J., Sr.,
*Respondent*
*Cross-Appellant,*

*and*

L. L. L.
and C. J.,
*Respondents.*

Clackamas County Circuit Court
050415J;

Petition Number 050415J01;

A141958

226 P3d 112

Christina Hutchins, Senior Assistant Attorney General, argued the cause for appellant - cross-respondent. With her on the briefs were John Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Gay Canaday argued the cause and filed the brief for respondent - cross-appellant J. L. J., Sr.

No appearance for respondent L. L. L.

Ann Lechman-Su argued the cause for respondent C. J. With her on the briefs was Johnson & Lechman-Su, PC.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

WOLLHEIM, P. J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

## WOLLHEIM, P. J.

The Department of Human Services (the department) appeals judgments of the juvenile court dismissing child's commitment to the custody of the department, approving child's placement with father, and vacating a judgment terminating mother's parental rights. Father cross-assigns error to the juvenile court's denial of his motion for guardianship as moot. We review the record *de novo*, ORS 419A.200(6)(b) (2007),[1] the juvenile court's procedural rulings for abuse of discretion, and its legal conclusions for errors of law. *State ex rel SOSCF v. Dennis*, 173 Or App 604, 606, 25 P3d 341, *rev den*, 332 Or 558 (2001). Based on that review, we affirm in part and reverse in part.

In 2005, child was found to be within the jurisdiction of the juvenile court and was placed in foster care. Thereafter, following a trial held in January 2007, the juvenile court entered a judgment terminating mother's parental rights. On January 8, 2007, father signed a document (the release) "for the purpose of adoption" that relinquished custody and control of child to the department and authorized the department to consent to an adoption of child. On the same date, father signed a certificate of irrevocability agreeing that the release would become irrevocable as soon as the department placed child "in the physical custody of a person or persons for the purpose of adoption by them." At that time, child was living with a foster family whom the department had identified as a potential adoptive placement. However, child was not adopted and was ultimately removed from that foster family and placed with a different foster family.

In 2008, the department reevaluated father as a possible placement for child and determined that he had significantly improved his circumstances. Father, at the direction of the department and the juvenile court, participated in a psychiatric evaluation, counseling, and other services. He also began visits with child, who was 12 years old at the time and had informed the court of her desire to have such visits.

---

[1] ORS 419A.200 was amended by Oregon Laws 2009, chapter 231, section 6. However, this appeal was filed prior to the effective date of those amendments and, accordingly, they are not applicable to this case. Furthermore, all statutory references herein are to the 2007 statutes.

Thereafter, having determined that father could adequately parent child and in light of child's expressed desire to return to her father's care, the juvenile court ordered that the primary case plan for child be changed from adoption or guardianship to reunification with father. After an additional period of time during which child's visits with father increased, a family decision meeting was held at which the parties agreed that child should be returned to father. Father then filed a motion for a shelter hearing in which he requested that the juvenile court approve child's placement with him or, in the alternative, appoint him as her guardian. At the hearing, all the parties agreed that it was in child's best interest to be placed with father. However, the department represented that, because of the release, it could not certify father as a placement for child.

After the hearing, the juvenile court entered a judgment approving child's placement with father, dismissing child's commitment to the custody of the department, and continuing child as a ward of the court. In addition, on its own motion, the court entered a judgment vacating and setting aside the earlier judgment terminating mother's parental rights. In that judgment, the court noted that "the plan is no longer adoption; the child does not consent to adoption [and] the father is an appropriate parent." Neither mother nor her attorney had been notified of or was present at the hearing.

■      In its first and third assignments of error, the department takes issue with the juvenile court's treatment of the release and its dismissal of the department's custody over child. In essence, the department takes the position that the release precluded the juvenile court from treating father as an ordinary parent with whom child could be reunified. The issue we must address, then, is whether, in light of the release, the juvenile court properly approved child's return to father and dismissed child's commitment to the department's custody.

ORS 418.270 provides for documents such as the release at issue in this case. Although, by its terms, that statute applies to "private child-caring agenc[ies]," pursuant to ORS 418.285, "the Department of Human Services has the same authority as a private-child caring agency under ORS

418.270 to 418.280. In exercising this authority, the department shall comply with the provisions of ORS 418.270 to 418.280 the same as a private child-caring agency." Under ORS 418.270(1), a parent may "sign releases or surrenders giving [a private child-caring agency] guardianship and control of [children received by the agency for care] during the period of such care, which may be extended until the children arrive at legal age." In addition, a release may surrender the rights of the parent with respect to adoption and entitle such an agency to consent to adoption of a child if the "release or surrender expressly recites that it is given for the purpose of adoption." *Id.* When a release or surrender is given for the purpose of adoption, the parent may also,

> "without any adoption proceeding having been initiated, agree that the release or surrender shall become irrevocable as soon as the child is placed by the agency in the physical custody of a person or persons for the purpose of adoption by them, and waive their right to personal appearance in court in matters of adoption of such children, by a duly signed and attested certificate. From and after such physical placement for adoption such certificate of irrevocability and waiver and the release or surrender may not be revoked by the parent or guardian unless fraud or duress is affirmatively proved."

ORS 418.270(4). Thus, the statute provides a mechanism for parents to relinquish both custody of their children and the right to consent to the adoption of those children and also restricts the ability of such parents to revoke such a relinquishment. Importantly, no provision of the statutes at issue purports to limit the juvenile court's jurisdiction or authority over a child who is the subject of a release like that executed by father in this case. Furthermore, a surrender does not, itself, effect a termination or severance of a child's relationship with his or her parent. Rather, such a severance can be accomplished *only* by way of a court order. ORS 418.270(2) ("Any entire severance of family ties of [a child for whom a release or surrender has been executed] by adoption or otherwise shall be accomplished only by the order of a court of competent jurisdiction"); *see also* ORS 419B.498 - 419B.524 (concerning termination of parental rights).

■ The proper role of the juvenile court in this case was to protect the child and, where possible and in child's best interest, promote the return of child to her parent. "Juvenile courts administering [dependency] statutes 'act in *parens patriae*, focusing on family unity and the best interests of the child.' " *State ex rel Dept. of Human Services v. W. P.*, 345 Or 657, 662, 202 P3d 167 (2009) (quoting *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189, 796 P2d 1193 (1990)); *see also* ORS 419B.090(2)(c) (dependency statutes are to be liberally construed to protect the welfare of children within the jurisdiction of the juvenile court); ORS 419B.090(3) ("It is the policy of the State of Oregon to safeguard and promote each child's right to safety, stability and well-being. The State of Oregon recognizes the importance of a child's relationships with parents, siblings, grandparents and other relatives."); ORS 419B.090(5) (recognizing "strong preference that children live in their own homes with their own families"). In light of its role in the context of dependency proceedings, the juvenile court in this case properly focused on achieving the outcome that all the parties, including the department, agreed was in child's best interest—reunification with her father.

As well, contrary to the department's contention, we conclude that the court did not abuse its discretion by dismissing child's commitment to the department's custody once she was reunified with father. ORS 419B.337(6) provides that "[c]ommitment of a ward [of the court] to the Department of Human Services continues until dismissed by the court or until the ward becomes 21 years of age." The court can appropriately dismiss a commitment where "the ward has been safely reunited with a parent[.]" ORS 419B.337(7)(a)(A); *see also* ORS 419A.004(16) (defining "parent" as used in ORS chapters 419A, 419B, and 419C). An abuse of discretion occurs when the court acts outside the boundaries established by law. *State ex rel Juv. Dept. v. Garcia*, 180 Or App 279, 286, 44 P3d 591 (2002). Here, given that child was reunited with father, whose familial ties with child had never been severed by a court, the juvenile court acted within the scope of its authority when it dismissed child's commitment to the custody of the department. Accordingly, the court did not abuse its discretion.

■ We next turn to the department's assertion that the juvenile court abused its discretion when it, on its own

motion, set aside and vacated the judgment terminating mother's parental rights to child. Specifically, the department points out that the judgment in question had been entered more than two years earlier and affirmed on appeal, that there was no motion to set aside the termination judgment, and that neither mother nor her representative were present at or provided notice of the proceeding. Although father makes no argument with respect to that issue, child contends that, in setting aside the judgment terminating mother's parental rights, the trial court acted properly within its authority pursuant to ORS 419B.923(8), which provides that the juvenile court retains inherent power to modify a judgment within a reasonable time or to set aside a judgment based on fraud upon the court. Here, there was no contention that the termination order had been the result of fraud upon the court. However, child takes the position that the juvenile court's judgment vacating and setting aside the prior termination judgment constituted a modification completed within a reasonable time pursuant to ORS 419B.923(8).

Pursuant to ORS 419B.923(1), "[e]xcept as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment made by it." ORS 419B.923(3) provides, in part, that "a motion to modify or set aside an order or judgment must be made within a reasonable time * * *." The department and child agree that, because there was no motion by any party requesting that the court vacate the termination judgment, ORS 419B.923(1) does not apply in this case. However, as noted above, under ORS 419B.923(8), the juvenile court nevertheless retains inherent authority to "modify an order or judgment within a reasonable time or * * * set aside an order or judgment for fraud upon the court."

We recently considered an issue similar to that raised by child in *Dept. of Human Services v. B. A. S. /J. S.*, 232 Or App 245, 221 P3d 806 (2009). In that case, the issue was whether an appeal from a judgment of the juvenile court was moot in light of the fact that adoption proceedings involving the children had been completed while the appeal was pending. In the process of resolving that question, we considered whether " 'modifying' the judgment within the meaning of [ORS 419B.923(8)] could reasonably be understood to also encompass setting it aside." *Id.* at 254. In other words, in a

case where there was no allegation of fraud on the court, could the juvenile court, nonetheless, set aside a judgment based on its power to modify that judgment within a reasonable time? Ultimately, however, we concluded that "even if the court's power to 'modify' that is recognized in [ORS 419B.923(8)] can be understood to include vacating the judgment entirely," it would still be necessary for the particular circumstances presented to bring the case within the scope of the court's inherent power to vacate. *Id.* at 258.

As we observed in *B. A. S. / J. S.*, "[i]t is well settled that a trial court can exercise its inherent authority to vacate a judgment only to make a technical amendment, to correct an error of the court, or in other extraordinary circumstances." *Id.* at 258 (quoting *Kneefel v. McLaughlin*, 187 Or App 1, 5-6, 67 P3d 947 (2003); internal quotation marks omitted). "Extraordinary circumstances" generally involve fraud or overreaching by a party, duress, breach of fiduciary duty, or gross inequity. *B. A. S. / J. S.*, 232 Or App at 258-59. Admittedly, the facts of this case may be seen as unusual. However, the type of "extraordinary circumstances" described above that would permit the court to vacate the judgment are not present in this case. Accordingly, even assuming that the juvenile court's inherent authority to modify a judgment within a reasonable time, as recognized by ORS 419B.923(8), includes the power to vacate such a judgment entirely, the circumstances presented in this case were not sufficient to trigger that authority. For that reason, we conclude that the trial court abused its discretion when it vacated the judgment terminating mother's parental rights.[2]

Judgment vacating termination of mother's parental rights reversed; otherwise affirmed.

---

[2] Given our resolution of the issues raised on appeal by the department, we do not reach father's cross-assignment of error.